THE UNITED STATES, PLAINTIFFS, *v.* THOMAS REID AND EDWARD CLEMENTS.

Where two persons were jointly indicted for an offence committed against the United States, viz., a murder committed upon the high seas, and were tried separately, it was not competent for the person first tried to call the other as a witness in his behalf.

The trial took place in Virginia, and the evidence would have been competent under a law of Virginia passed in 1849.

But the 34th section of the Judiciary Act of 1789, declaring that the laws of the several States shall be regarded as rules of decision in trials at common law in the courts of the United States, meant only to include civil cases at common law, and not criminal offences against the United States.

The law by which the admissibility of testimony in criminal cases must be determined, is the law of the State, as it was when the courts of the United States were established by the Judiciary Act of 1789.

Without laying down any general rule, how far the affidavits of jurors impeaching their verdict ought to be received, it is decided that the affidavits of two jurors, stating that, whilst impanelled, they read a newspaper report of the preceding evidence, but which had no influence upon their verdict, were not sufficient ground for a new trial.

THIS case came up from the Circuit Court of the United States for the Eastern District of Virginia, upon a certificate of division in opinion between the judges thereof.

The facts are all stated in the opinion of the court.

It was argued by *Mr. Joynes* and *Mr. Crittenden*, (Attorney-General,) for the United States, and by *Mr. Crane* and *Mr. Scott*, for the defendants.

Mr. Chief Justice TANEY delivered the opinion of the court.

This case comes before the court upon a certificate of division between the judges of the Circuit Court for the District of Virginia.

Thomas Reid and Edward Clements were jointly indicted for murder, committed by them on the high seas, on board the American ship J. B. Lindsey.

They were, by the permission of the court, separately tried, and, upon the trial of Reid, he proposed to call Clements as a witness on his behalf. The court rejected the testimony, being of opinion that, as he was jointly indicted with the prisoner on the trial, he was not a competent witness. Reid was found guilty by the jury.

At a subsequent day he moved for a new trial upon two grounds: 1st. Because the testimony of Clements was improperly rejected; and, 2d. For misbehavior in two of the jury who tried the cause. In support of the second objection, he offered in evidence the voluntary affidavits of the two jurors, one of

whom deposed " that, while the case was on trial, and the jury were impanelled, a newspaper was sent to him by some of his family from his counting-room. It was a newspaper for which he was a subscriber, which was regularly left at his counting-house, and which he was accustomed to read. He looked slightly over it, and saw that it contained a report of the evidence which had been given in the case under trial, a part of which he read and put the paper in his pocket; that, while the jury were in their room deliberating on their verdict, he read over the report of the evidence in the newspaper; he read it from curiosity, and thought it correct, and that it refreshed his memory; but it had no influence on his verdict, and that he had made up his mind before he read it. There was no conversation about the newspaper report in the jury-room, nor did he speak of it there to any one, nor does he know that the other jurors knew that the report of the evidence was in the newspaper they saw him reading."

The other juror deposed " that he saw this newspaper while the jury was impanelled in the court-room, and, upon looking at it, saw that it contained a report of the evidence that had been given in the case under trial. He looked over a few sentences and put the paper aside, and did not see it afterwards. He did not think the report accurate; it had not the slightest influence on his judgment."

Upon the argument of the motion above mentioned the following questions arose:

1st. Ought the court to have received the evidence of Clements in behalf of the prisoner; and does the refusal of the court to admit his testimony entitle the prisoner to a new trial?

2d. Ought the affidavits of the two jurors to be received; and do the facts stated in them entitle the prisoner to a new trial?

And upon each of these points the judges of the Circuit Court were opposed in opinion, and ordered that the questions be certified to the Supreme Court for its decision.

The difficulty in the first question arose upon the construction of the 34th section of the act of Congress of 1789.

By a statute of Virginia, adopted in 1849, it is provided "that no person who is not jointly tried with the defendant shall be incompetent to testify in any prosecution by reason of interest in the subject-matter thereof." And if the section in the Judiciary Act above referred to extends to the testimony in criminal cases in the courts of the United States, then the testimony of Clements was improperly rejected.

The section in question declares that the laws of the several

States, except where the Constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision, in trials at common law, in the courts of the United States, in cases where they apply.

The language of this section cannot, upon any fair construction, be extended beyond civil cases at common law, as contradistinguished from suits in equity. So far as concerns rights of property, it is the only rule that could be adopted by the courts of the United States, and the only one that Congress had the power to establish. And the section above quoted was merely intended to confer on the courts of the United States the jurisdiction necessary to enable them to administer the laws of the States. But it could not be supposed, without very plain words to show it, that Congress intended to give to the States the power of prescribing the rules of evidence in trials for offences against the United States. For this construction would in effect place the criminal jurisprudence of one sovereignty under the control of another. It is evident that such could not be the design of this act of Congress, and that the statute of Virginia was not the law by which the admissibility of Clements as a witness ought to have been decided.

Neither could the court look altogether to the rules of the English common law, as it existed at the time of the settlement of this country, for reasons that will presently be stated. Nor is there any act of Congress prescribing in express words the rule by which the courts of the United States are to be governed, in the admission of testimony in criminal cases. But we think it may be found with sufficient certainty, not indeed in direct terms, but by necessary implication, in the acts of 1789 and 1790, establishing the courts of the United States, and providing for the punishment of certain offences. And the law by which, in the opinion of this court, the admissibility of testimony in criminal cases must be determined, is the law of the State, as it was when the courts of the United States were established by the Judiciary Act of 1789. The subject is a grave one, and it is therefore proper that the court should state fully the grounds of its decision.

The colonists who established the English colonies in this country, undoubtedly brought with them the common and statute laws of England, as they stood at the time of their emigration, so far as they were applicable to the situation and local circumstances of the colony. And among the most cherished and familiar principles of the common law was the trial by jury in civil, and still more especially in criminal cases. And, however the colonies may have varied in other respects in the modifications with which the common or statute law was adopted,

the trial by jury in all of them of English origin was regarded as a right of inestimable value, and the best and only security for life, liberty, and property.

But as the law formerly stood, the value of this right was much impaired by the mode of proceeding in criminal cases. For when a person was accused of a capital crime, and his life depended upon the issue of the trial, he was denied compulsory process for his witnesses; and when they voluntarily appeared in his behalf, he was not permitted to examine them on oath, nor to have the aid of counsel in his defence, except only as regarded the questions of law.

It is true that Lord Coke, in his 3 Inst. part 3, 79, declares in strong terms that the rule which prohibited the witnesses for the accused from being examined on oath, was not founded in law. Yet the rule, at the period we speak of, was daily sanctioned and acted on in the English Courts. 2 H. Pl. of the Crown, 283, 4 Bl. Com. 355, 358, 359, and was in full force when the English colonies were planted in this country.

This oppressive mode of proceeding had been abolished in England and the Colonies also by different statutes before the declaration of independence. But the memory of the abuses which had been practised under it had not passed away. And the thirteen Colonies who united in the declaration of independence, as soon as they became States, placed in their respective constitutions or fundamental laws, safeguards against the restoration of proceedings which were so oppressive and odious while they remained in force. It was the people of these thirteen States which formed the Constitution of the United States, and ingrafted on it the provision which secures the trial by jury, and abolishes the old common-law proceeding which had so often been used for the purposes of oppression. And the provisions in the Constitution of the United States in this respect are substantially the same with those which had been previously adopted in the several States. They were overlooked in the Constitution of the United States as originally framed. But as soon as the public attention was called to the fact, that the securities for a fair and impartial trial by jury in criminal cases had not been inserted among the cardinal principles of the new government, they hastened to amend it, and to secure to a party accused of an offence against the United States, the same mode of trial, and the same mode of proceeding, that had been previously established and practised in the courts of the several States.

It was for this purpose that the 5th and 6th amendments were added to the Constitution. The 6th amendment provides that, in all criminal prosecutions, the party accused shall be entitled

to a trial by jury, to be confronted with the witnesses against him, to have compulsory process for the witnesses in his favor, and to have the aid of counsel in his defence.

The Judiciary Act of 1789, sect. 20, provides for the manner of summoning jurors, and directs that in all cases (of course including criminal as well as civil cases) they shall be designated by lot or otherwise in each State, according to the mode of forming juries therein as then practised, so far as the law of the State shall render such designation practicable by the courts or marshals of the United States; and that the jurors shall have the same qualifications as were requisite for jurors by the law of the State of which they are citizens, in the highest court of law in the State. Both of these provisions are confined by plain language to the State laws as they then were.

The Crimes Act, as it is usually called, of 1790, sect. 29, makes some further regulations, which it is not necessary here to specify, in relation to the proceedings and right of peremptory challenge in criminal cases before the jury are impanelled.

But neither of these acts make any express provision concerning the mode of conducting the trial after the jury are sworn. They do not prescribe any rule by which it is to be conducted, nor the testimony by which the guilt or innocence of the party is to be determined. Yet, as the courts of the United States were then organized, and clothed with jurisdiction in criminal cases, it is obvious that some certain and established rule upon this subject was necessary to enable the courts to administer the criminal jurisprudence of the United States. And it is equally obvious that it must have been the intention of Congress to refer them to some known and established rule, which was supposed to be so familiar and well understood in the trial by jury that legislation upon the subject would be deemed superfluous. This is necessarily to be implied from what these acts of Congress omit, as well as from what they contain.

But this could not be the common law as it existed at the time of the emigration of the colonists, for the constitution had carefully abrogated one of its most important provisions in relation to testimony which the accused might offer. It could not be the rule which at that time prevailed in England, for England was then a foreign country, and her laws foreign laws. And the only known rule upon the subject which can be supposed to have been in the minds of the men who framed these acts of Congress, was that which was then in force in the respective States, and which they were accustomed to see in daily and familiar practice in the State courts. And this view of the subject is confirmed by the provisions in the act of 1789, which refers its courts and officers to the laws of the respective States

31*

for the qualifications of jurors and the mode of selecting them. And as the courts of the United States were in these respects to be governed by the laws of the several States, it would seem necessarily to follow that the same principles were to prevail throughout the trial : and that they were to be governed in like manner, in the ulterior proceedings after the jury was sworn, where there was no law of Congress to the contrary.

The courts of the United States have uniformly acted upon this construction of these acts of Congress, and it has thus been sanctioned by a practice of sixty years. They refer undoubtedly to English works and English decisions. For the law of evidence in this country, like our other laws, being founded upon the ancient common law of England, the decisions of its courts show what is our own law upon the subject where it has not been changed by statute or usage. But the rules of evidence in criminal cases, are the rules which were in force in the respective States when the Judiciary Act of 1789 was passed. Congress may certainly change it whenever they think proper, within the limits prescribed by the Constitution. But no law of a State made since 1789, can affect the mode of proceeding or the rules of evidence in criminal cases: and the testimony of Clements was therefore properly rejected, and furnishes no ground for a new trial. .

The first branch of the second point presents the question, whether the affidavits of jurors impeaching their verdict ought to be received.

It would perhaps hardly be safe to lay down any general rule upon this subject. Unquestionably such evidence ought always to be received with great caution. But cases might arise in which it would be impossible to refuse them without violating the plainest principles of justice. It is however unnecessary to lay down any rule in this case, or examine the decisions referred to in the argument. Because we are of opinion that the facts proved by the jurors, if proved by unquestioned testimony, would be no ground for a new trial. There was nothing in the newspapers calculated to influence their decision, and both of them swear that these papers had not the slightest influence on their verdict.

We shall therefore answer the first question in the negative: and to the second, that the facts stated in the affidavits of the jurors do not entitle the prisoner to a new trial; and certify accordingly to the Circuit Court.

## *Order.*

This cause came on to be heard on the transcript of the

record from the Circuit Court of the United States for the Eastern District of Virginia, and on the points or questions on which the judges of said Circuit Court were opposed in opinion, and which were certified to this court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this court — 1st. That the said Circuit Court ought not to have received the evidence of Clements in behalf of the prisoner; and that the refusal of the court to admit his testimony does not entitle the prisoner to a new trial; and 2dly. That the facts stated in the affidavits of the jurors do not entitle the prisoner to a new trial. Whereupon it is now here ordered and adjudged by this court, that it be so certified to the said Circuit Court.