WERNER v. THE STATE.

1. MOTION FOR NEW TRIAL: *Office of.*

It is not the province of a motion for new trial to bring upon the record irregularities that occurred at the trial. The facts constituting the error complained of and the exceptions to the ruling of the court, must be shown by bill of exceptions: and the motion for new trial can serve no other purpose than to assign the ruling or action of the court as error.

2. **Witnesses:** *Disqualification of convicts: Restoration by pardon.*
Section 2859 Mansfield's Digest disqualifying convicted criminals as witnesses, applies only in *civil* and not in *criminal* trials. But such parties as were disqualified by the common law rule are still disqualified, the statute not affecting the rule; but their disqualification is removed by the pardon of the Governor, though their conviction may still be urged against their credibility.

3. **Convicts: County Prisoners:** *Corporal punishment.*
Corporal punishment by the lash can be lawfully inflicted by contractors upon county prisoners for refusal to work, or upon convicts in the penitentiary, only under rule or regulation made by the State board of prison commissioners for the discipline of convicts in the penitentiary; and if the commissioners have not authorized the use of the lash in the latter class, it cannot be used in either.

4. **Motion for New Trial:** *Prejudice of juror discovered after trial.*
When a juror states upon his *voir dire* that he has formed and expressed an opinion of the prisoner's guilt, but has no prejudice against him and can give him an impartial trial, and is accepted by the prisoner without examination as to his feelings and statements, the prisoner cannot afterward urge after-discovered statements of the juror showing strong bias and belief of his guilt as a ground for new trial.

APPEAL from *Jefferson* Circuit Court.

Hon. J. A. Williams, Circuit Judge.

*W. P. & A. B. Grace* for appellant.

1. The court erred in admitting the testimony of Ike Harris. One convicted of petit larceny, even after pardon, cannot testify in a criminal case. *Digest, 2482; 35 Ark., 449; 39 Ib., 229; Greenleaf Ev., 12th ed., sec. 378 and note.*

2. One of the jurors, though on examination on his *voir dire*, he stated that he had formed an opinion from rumor, etc., but could give the accused a fair and impartial trial, was prejudiced, and had made statements that appellant ought to be hung, etc. This was ground for new trial. *2 Whar. Am. Cr. L., 5th ed., sec. 3152, and authorities cited; 1 Whart. St. T., 606; 40 Ark., 515.*

3. As contractor to safely keep prisoners, etc., appel-

lant had the right and it was lawful for him to enforce discipline by inflicting corporal punishment. (*Acts 1881, p. 149, sec. 4; p. 121, secs. 1 and 9; Rules and Regulations Board Pen. Comrs., secs. 4, 5, 7, etc.*) The necessities of the case require it. The right existed at common law in this and other cases. *2 Whar. Am. Cr. Law, secs. 1259–60; Ib., sec. 2863–4.*

4. It was error to exclude testimony that the whipping was done by Bess. The indictment charged that it was done by Freeman, and if it was proven to have been done by another, without appellant's aiding or abetting, this would have acquitted him. *1 Chitty Cr. L, *p. 556 ; 4 Bish. Cr. Pro., sec. 496; 1 Whar. Cr. L., sec. 593; 1 Phillips Ev., 824, 844 and note 237.*

5. Appellant and Freeman should have been allowed to elect the order of their trial. *Gantt's Digest, sec. 1891.*

6. Review the evidence and contend that the verdict was contrary to the evidence. (*34 Ark., 639.*) The evidence fairly shows a case of death by *misadventure*, unless it should be held that the act of whipping was unlawful *per se*, in which case the homicide was involuntary manslaughter. (*2 Whar. Cr. L., sec. 977 ; Gantt's Digest, secs. 1266, 1292; 1 East. P. C., 261; Whart. on Hom., secs. 128, 130.*) If there be no malice in the master the crime is manslaughter only. (*2 Wh. C. L., sec. 1014 and note h; 4 Mason, C. C., 505; Whart. on Hom., secs. 93, 97, 113, 130, 150.*)

*Dan W. Jones*, Attorney General, *contra.*

1. The "rules and regulations of the board of commissioners" were not introduced in evidence, they constitute no part of the public law of this State, and the courts could not take judicial cognizance of them. But if they had been, appellant did not comply with them in any respect. The whipping was cruel and unusual, contrary to all law and the dictates of humanity. *Const., art. 2, sec.*

*91; State v. Hoover, Dev. & Bat., 365 ; Mansfield's Digest, sec. 1527.*

2.　The record fails to show that appellant and Dan Freeman elected the order in which they should be tried. It is only set up in the motion for new trial, and cannot be considered. *Mansfield's Digest, secs. 2301, 2306 ; 39 Ark., 225; 40 Ib., 459.*

3.　Harris was a competent witness, having been pardoned by the Governor. *Mansfield's Digest, sec. 2858*, applies to *civil* and not to *criminal* cases. The incompetency in criminal cases not being created by statute, but by the common law, a pardon restores competency. *Greenl. Ev., 12th ed., sec. 378 and notes; 12 Ark., 122; 10 Ib., 284; 15 Ib., 431; 10 Johns., 232, 483 ; 4 Bl. Com., 402; 6 Bac. Ab., Title Pardon; Hawk. P. C., B. 2 Ch., 37 ; sec. 48, vol 4, 7th ed., p. 354; 1 Bish. Cr. L., sec. 917 ; 4 Wall., 380.*

4.　The record does not show that the court *excluded* the depositions to show that the whipping was done by another than Freeman. Appellant should have offered to read his depositions; then, if excluded, or if improper testimony was admitted in rebuttal, he might complain. Appellant has not brought himself within the rule. *Mansfield's Digest, 2146, 2149, 2304, 2306; 39 Ark., 225; 40 Ib., 459.*

5.　As to the disqualification of the juror King, he was properly examined on his *voir dire*, and stated that he could give appellant a fair and impartial trial, etc. Appellant did not question him as to his previous declarations, but accepted him on the panel. The court heard the examination, the affidavits, etc., and the granting of a new trial was within its discretion, and this court will not infer that it abused such discretion. *40 Ark., 515, 516 ; 15 Georgia, 223 ; 19 Ark., 164.*

COCKRILL, C. J.    Appellant and one Dan Freeman were
jointly indicted for the murder of William Sharpe.    The
facts, as far as it is necessary to state them, are as
follows:    Appellant was the lessee of the county prison-
ers of Desha county.    Sharpe was convicted of a misde-
meanor in July, 1883, and was placed in appellant's
custody to work out his fine.    He was a mechanic and
unused to farm labor, but he was stout and apparently in
good health, and appellant put him to hoeing cotton with
other prisoners.    Five or six days afterwards, near the
close of the day's labor, Sharpe quit work, leaned upon
his hoe for support, and refused to move on.    The negro
guard, Dan Freeman, called appellant from another part of
the field.    After he came up, and under his direction, four
or five men stretched Sharpe on the ground, face down,
and stripped off his clothing so as to leave his back and
thighs bare.    His back showed the marks of former
whippings.    Dan Freeman stood over him and laid
on twenty-five or thirty blows with an instrument
made of a piece of gin belting as wide or wider than a
man's hand, about eighteen inches long, fastened to a
wooden handle.    It is useless to recount the sickening de-
tails of the whipping as given by the witnesses.    It is
enough to say that Sharpe died a few hours thereafter,
and that there was no lack of testimony that appellant
stood by all the while directing the beating, and that it
was the cause of the death.    There was also evidence that
appellant had previously threatened to put Sharpe out of
the way, because he had complained of the manner of his
treatment.    The witnesses, except those who testified as to
the condition of the body after it was exhumed, and some
medical experts, were either ex-prisoners from the county
farm or the negro employés and mistress of appellant; the

former testifying for the State and the latter for appellant.
Their statements were contradictory upon some of the ma-
terial facts at issue, but the jury found appellant guilty
of murder in the second degree, and assessed his punish-
ment at twenty-one years in the penitentiary.  The trial
was in Jefferson county on change of venue from Desha,
appellant electing to be tried alone.

It is urged that a new trial should be granted because, 1. MOTION
                                                         FOR NEW
as is alleged, the court refused to permit the appellant and   TRIAL:
                                                         Office of.
Freeman, who was jointly indicted with him, to determine
for themselves the order in which they should be tried.
We find nothing in the record on this subject, outside of
the statement contained in the motion for a new trial.  It
is not the province of such a motion to bring upon the
record irregularities that occur in the course of a trial.
The facts constituting the error complained of, together
with the exceptions to the ruling of the court, should be
made to appear by bill of exceptions, and the motion for
a new trial can serve no other purpose than to assign the
ruling or action of the court as error.  There are several
other causes for a new trial alleged in the motion here
that are in the same category, and we can not consider
them.   They were doubtless intended only as persuasive
to the Circuit Court to set aside the verdict.

Ike Harris was sworn as a witness on the part of the 2. WIT-
                                                        NESSES:
State, but before he was permitted to testify, it was regu-   Disquali-
                                                        fication of
larly shown that he had been convicted of petit larceny in convicts:
                                                        Effect of
this State.   The prosecution produced a full and uncon-   pardon.
ditional pardon by the Governor of the offense of which
the witness had been convicted, but appellant still insisted
upon his disqualification to testify.

At common law, a person convicted of larceny, whether
grand or petit larceny, was excluded from being a witness,
and the disqualification of infamy which arose from such

conviction has not been removed by statute in this State. In civil cases the disqualification is removed by *sections 2858-9 Mansfield's Digest*, as to all of the infamous crimes known to the common law, excepting those specially named in the statute.

The authorities, with one voice, assert that the common law disability by infamy may be removed by a pardon from the person or body authorized to act in that behalf. It is held, however, by some of the courts that where a *statute* prescribes that persons who have been convicted of certain offenses shall thereafter be incompetent to testify in any case, a pardon by the Governor will not restore the competency to be a witness. The question does not arise in this case. There is no inhibition in our statute against persons giving testimony in criminal cases. The only provision in that regard has already been referred to, and is as follows:

*Section 2858 Mansfield's Digest:* "All persons except those enumerated in the next section, shall be competent to testify in a civil action."

*Section 2859:* "The following persons shall be incompetent to testify: First. Persons convicted of a capital offense, or of perjury, subornation of perjury, burglary, robbery, larceny, receiving stolen goods, forgery or counterfeiting, except by consent of the parties. Second. Infants under the age of ten years, etc."

If argument were needed beyond the language of these provisions that the statutory restrictions contained in them are made for civil cases only, it is found in the following facts: They were enacted as a part of the civil code, which purports from its name and provisions to regulate the mode of procedure in civil cases. The act is entitled "A Code of Practice in Civil Cases." The "Code of Practice in Criminal Cases," enacted at the same time,

in terms, makes the provisions of the Civil Code apply to and govern the manner of summoning and coercing the attendance of witnesses and compelling them to testify, but nothing is said about their competency.

In *Warner v. State, 25 Ark., 447*, it was ruled that the statute under consideration did not apply in criminal proceedings. See, too, *Perry v. People, 86 N. Y., 353.*

In *Walker v. State, 39 Ark., 229*, the court cite this statute in a criminal case, but the question is not discussed, and the proposition of law announced by the court in that connection is correct, independent of any statute. The common law rule as to disqualification by reason of infamy in criminal cases, is in nowise affected by the statute, and the appellant can not invoke its aid to raise an argument against the Governor's power by pardon to restore a convict to his former capacity as a witness. After pardon the fact of conviction can still be used to affect his credibility. The jury were instructed that they might consider it for that purpose in this case.

Appellant offered to read to the jury certain depositions tending to show that the whipping charged was done by one Bess and not by Freeman, when the court admonished him that if the depositions were put in evidence the State would be permitted to show that Bess had maltreated the deceased man on occasions prior to the last whipping. The appellant declined to offer his depositions in evidence, and now assigns the action of the court as error. His depositions were not excluded by the court. They were never offered as evidence. If he had offered to read them, and the court had rejected them; or if they had been read and improper evidence had been admitted for the State in rebuttal, the questions argued here now could then have been considered. As it is, there is nothing before us except the admonition of the court. This deprived appellant of no

right, and we fail to discover in what manner he was preju-
diced by it.

**3. Corporal punishment.**    No exception was taken to the charge of the court ex-
cept as to two points.   The first related to the appellant's
right to inflict moderate corporal punishment upon the
prisoners in his custody.   The court instructed the jury
that appellant could not lawfully do this himself or author-
ize any one else to do it.

The statute under which the appellant obtained his con-
tract provides as follows:   "It shall be the duty of said
contractor to safely keep said prisoners, and he shall pro-
vide them with sufficient wholesome food and clothing and
medicine and medical attention, and may work the said
prisoners on a farm or at any other lawful labor, under the
same rules and regulations as convicts are worked by the
lessees of the State penitentiary."   *Section 1233 Mansfield's
Digest.*

The "rules and regulations" that control the lessees of
the penitentiary are prescribed by a board of prison com-
missioners, composed of the Governor, Secretary of State
and Attorney General, by virtue of this section of the
statute:   "The said board of commissioners *shall* prescribe
such rules for the regulation of such penitentiary, and for
the management thereof, as in their judgment will prevent
the inhuman treatment and preserve the discipline of the
convicts and protect the interests of the State."   *Section
4876 Mansfield's Digest.*

The chief purpose of the act under which appellant
held his contract, was to reduce the expense of enforcing
the criminal laws.   To accomplish this end certain classes
of prisoners who had before been punished generally by
imprisonment only, were made liable to an additional
punishment of hard labor; they were to be removed from
the supervision of the officers whose sworn duty it was to

see to their welfare and be intrusted to the care of persons who would hire them for gain, and who, it was no violence to assume, would not be over-nice in the means adopted to force them to labor to the greatest profit. The act, therefore, seeks jealously to guard against the danger of the prisoner being subjected to harsh or inhuman treatment, by placing the whole question of discipline in the hands of the chief executive officers of the State, to be defined and regulated at their will. No regulations by the board were put in evidence, and we can not know the import of any that may have been adopted by them. *Boone v. State, 8 Lea (Tenn.), 739.*

Corporal punishment by the lash can be inflicted lawfully upon the convicts in the penitentiary for refusal to work, only under a rule or regulation made for that purpose by the board of commissioners; for all questions of discipline are deferred to their discretion by the Legislature, and it follows that the manner of punishment to be inflicted by way of correction must be prescribed by them. If they have prohibited the lash, or failed to authorize its use, this mode of punishment can not be inflicted upon the felons in the State prison, and it would be strange if, under the same circumstances, a harder measure of punishment could be meted out to the county prisoners, whose term of imprisonment is often due more to their inability to pay the costs of prosecution in inferior courts than to any serious offense against the public; or who are merely awaiting trial, and have elected to labor with the convicted prisoners, and afterwards have the benefit of their labor, rather than lie idle in jail.

The common law undoubtedly recognized the right of personal chastisement in several classes of individuals, but our penitentiary and county prison systems are modern institutions, and the common law authorities have but

little bearing on the subject. Moreover, "this form of punishment has fallen under the ban of modern civilization as tending to degrade the individual and destroy the sense of personal honor. It has been banished from the army and navy, and is no longer treated as an ordinary mode of punishment even for high crimes." *Cornell v. State, 6 Lea (Tenn.), 624.*

But it is immaterial what authority the common law would have given appellant, as we hold the statute has vested in the board of commissioners the exclusive right to say what the discipline shall be in such cases. If one in appellant's position had the right to whip the prisoners in his custody, in the absence of the statute, the provisions we have referred to took it from him and made it discretionary with the board as to whether the power should be conferred upon him. We can not infer that they have granted this power, and the court did not err in its instruction in this regard.

The appellant prayed for one other instruction which was refused. The purport of it was that if Sharpe was "not a sound and able-bodied man," and that the whipping would not have been mortal to a well person, appellant should be acquitted, unless Sharpe's condition was "known or apparent to him."

No error is urged here on account of the rejection of this prayer for instruction. It is open to several objections, and we need say no more than that the most appellant could have asked upon this hypothesis was that the offense should be reduced to manslaughter. (*Commonwealth v. Fox, 7 Gray, 585.*) This he did not ask.

The court's charge to the jury was fair and full. Their attention was especially directed to the distinction between murder and manslaughter and the degrees of murder. The inference of intent and malice was left to them to be

drawn from all the circumstances of the case, under proper instructions prayed by the State, and no instruction on this subject was asked by appellant and refused by the court. There was evidence sufficient to every material point to sustain the verdict, and we can not disturb it on the idea of an insufficiency of proof.

The final argument for new trial is that it was discovered after verdict that one of the jurors was disqualified by reason of prejudice against appellant. The showing made is by affidavit to the effect that the juror had made statements about the case before he was selected as one of the panel, showing a strong bias against appellant, and a belief in his guilt. This juror, when examined on his *voir dire*, stated that he had learned from rumor and newspapers what purported to be the facts in this case, and that upon this he had formed and expressed an opinion about it; that he had no prejudice against appellant and could give him an impartial trial. He was accepted as a juror by the appellant, without being asked, as far as the record discloses, as to the character and nature of the statements which he admitted that he had made about the case. Appellant was put upon his guard by the juror himself, and having failed to avail himself of the privilege of examining him touching the statements he avowed on his *voir dire* he had previously made, it was too late after verdict to inquire of others what their purport was, and then insist upon a disqualification by reason of them. *Casat v. State, 40 Ark., 515; Meyer v. State, 19 Ib.; 156.*

Finding no error in the record the judgment is affirmed.

<div style="float:right">3. MOTION FOR NEW TRIAL: Prejudice of juror discovered after trial.</div>