## MAXEY v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 23, 1913.)

### No. 3,913.

1. CRIMINAL LAW (§ 1120*)—APPEAL—RECORD—MATTERS TO BE INCLUDED.

A bill of exceptions complaining of the admission of the testimony of a witness who had been convicted of a felony and sentenced to imprisonment in the penitentiary would be considered on appeal, though the record of such witness' conviction and sentence did not appear in the record on appeal, where it showed that such record was offered and that the court made no point that the record did not show the facts to prove which it was offered but merely ruled that the facts shown did not disqualify the witness.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2931–2937; Dec. Dig. § 1120.*]

2. COURTS (§ 349*)—PROCEDURE—WITNESSES—COMPETENCY—STATE LAW.

The competency of witnesses to testify in criminal cases in the courts of the United States is determined by the common law of the state where the trial is had, as it was when such courts were established, except where Congress in special cases may provide otherwise.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 925; Dec. Dig. § 349.*

Competency of witnesses in federal court following state practice, see notes to O'Connell v. Reed, 5 C. C. A. 602; Bank of California v. Cowan, 21 C. C. A. 278.]

3. CRIMINAL LAW (§ 1144*)—APPEAL—PRESUMPTIONS.

Where counsel for defendant objected to the competency of a witness, stating that he had been convicted of a felony and sentenced to the penitentiary for 15 months, offering the record of his conviction and sentence, it would be assumed, in the absence of such record from the record on appeal, and in the absence of any objection on that ground, that the record showed that his conviction and sentence was for a felony.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2736–2764, 2766–2771, 2774–2781, 2901, 3016–3037; Dec. Dig. § 1144.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4 WITNESSES (§ 48*)—COMPETENCY—"INFAMOUS PUNISHMENT."

Imprisonment in a penitentiary is an "infamous punishment" within the common-law rules as to the competency of witnesses.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 109–115; Dec. Dig. § 48.*

For other definitions, see Words and Phrases, vol. 4, pp. 3577, 3578; vol. 8, p. 7687.]

5. WITNESSES (§ 48*)—COMPETENCY—CONVICTION OF CRIME.

A person convicted of a felony and sentenced to the penitentiary for 15 months was incompetent as a witness in a criminal case in a United States court, since at common law conviction and punishment for treason, felony, and the crimen falsi disqualify a witness, and the common-law rule has been changed by Congress only as to civil suits.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 109–115; Dec. Dig. § 48.*]

6. WITNESSES (§ 48*)—COMPETENCY—"CRIMEN FALSI."

The "crimen falsi" of the common law not only involved the charge of falsehood but also is one which may injuriously affect the administration of justice by the introduction of falsehood and fraud.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 109–115; Dec. Dig. § 48.*

For other definitions, see Words and Phrases, vol. 2, p. 1741.]

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Robert E. L. Maxey was convicted of conspiring to commit an offense against the United States, and he brings error. Reversed, and new trial ordered.

See, also, 200 Fed. 997.

George W. Murphy, of Little Rock, Ark. (E. L. McHaney, of Little Rock, Ark., and W. H. Martin, of Hot Springs, Ark., on the brief), for plaintiff in error.

Wm. G. Whipple, U. S. Atty., and Powell Clayton, Asst. U. S. Atty., both of Little Rock, Ark.

Before SANBORN and CARLAND, Circuit Judges, and WILLARD, District Judge.

CARLAND, Circuit Judge. Maxey and one Henry B. Copeland were indicted for conspiring to commit an offense against the United States; the offense being the devising of a scheme to defraud by carrying on a correspondence through the mails. Maxey, having been tried and convicted, brings error.

[1] The following appears from the bill of exceptions.

"The United States, to maintain the issues upon its part, introduced as witnesses first H. B. Copeland, but the defendant objected to his competency, stating that at the April term, 1912, of said court he had been convicted of a felony and sentenced to 15 months in the penitentiary at Atlanta, Ga., and offering the record of his conviction and sentence. The court overruled the objection, stating that that did not disqualify him, and defendant at the time excepted. Whereupon said Copeland testified as follows."

This ruling of the court is assigned as error, and as Copeland was a co-conspirator of Maxey and a witness without whose testimony

no conviction could have been had, it is important that this ruling be carefully considered. The record of the conviction and sentence of Copeland does not appear in the record. The record, however, does show that such record was offered, and in view of the fact that the court made no point that the record did not show the facts to prove which it was offered, but ruled that the facts shown did not disqualify the witness, it cannot now be objected that the record of the conviction and sentence of Copeland does not appear in the record before us.

[2] The competency of witnesses to testify in criminal cases in the courts of the United States is determined by the common law, except where Congress in special cases may otherwise provide. Logan v. United States, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429. The Supreme Court in the case cited had under consideration section 858, R. S. U. S. (U. S. Comp. St. 1901, p. 659), and after full consideration determined that the provision of that section reading as follows:

"In all other respects, the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty"—

referred to civil cases only, and in so deciding used the following language:

"'And the section above quoted was merely intended to confer on the courts of the United States the jurisdiction necessary to enable them to administer the laws of the states. But it could not be supposed, without very plain words to show it, that Congress intended to give to the states the power of prescribing the rules of evidence in trials for offenses against the United States. For this construction would in effect place the criminal jurisprudence of one sovereignty under the control of another. It is evident that such could not be the design of this act of Congress.' The law by which, in the opinion of this court, the admissibility of testimony in criminal cases must be determined is the law of the state, as it was when the courts of the United States were established by the Judiciary Act of 1789 [Act Sept. 24, 1789, c. 20, 1 Stat. 73].' The courts of the United States have uniformly acted upon this construction of these acts of Congress, and it has thus been sanctioned by a practice of 60 years.' United States v. Reid, 12 How. 361, 363, 366 [13 L. Ed. 1023]. * * *

"For the reason above stated, the provision of section 858 of the Revised Statutes that 'the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty,' has no application to criminal trials; and therefore the competency of witnesses in criminal trials in the courts of the United States held within the state of Texas is not governed by a statute of the state which was first enacted in 1858 but, except so far as Congress has made specific provisions upon the subject, is governed by the common law, which, as has been seen, was the law of Texas before the passage of that statute and at the time of the admission of Texas into the Union as a state."

Section 858 was amended June 29, 1906 (Act June 29, 1906, c. 3608, 34 Stat. at L. 618 [U. S. Comp. St. Supp. 1911, p. 271]), so as to read as follows:

"Sec. 858. The competency of a witness to testify in any civil action, suit or proceeding in the courts of the United States shall be determined by the laws of the state or territory in which the court is held."

It thus appears that there has been no legislation by Congress changing the rule of the common law as to the competency of witnesses in criminal cases in the courts of the United States except in special instances not material in this case. It was not until March 16, 1878 (Act March 16, 1878, c. 37, 20 Stat. at L. 30 [U. S. Comp. St. 1901, p. 660]), that persons charged with crime in the courts of the United States were made competent witnesses in their own behalf. Thus for nearly a century the common-law disqualification obtained as to persons charged with crime. In the rapid march of events we often forget that we did not always possess the liberties that we now enjoy. As another illustration of the change in the common-law rule of evidence, we may refer to the act of Congress approved February 26, 1913, which provides as follows:

"In any proceeding before a court or judicial officer of the United States where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses, or by the jury, court, or officer conducting such proceeding, to prove or disprove such genuineness."

It will be seen that this law changes the common-law rule in regard to the comparison of writings where the genuineness of the handwriting of any person may be involved. The rule of the common law would not permit a comparison of handwriting unless the writing to be compared was properly in the case for other purposes than mere comparison. Withaup v. United States, 127 Fed. 530, 62 C. C. A. 328.

If we are to look to the common law of Arkansas where the trial was had, we learn that the disqualification of infamy which arose from the conviction of crime at common law has not been removed by statute in that state, except partially in civil cases. Werner v. State, 44 Ark. 122. We do not cite this case on the assumption that the Legislature of Arkansas has any power to provide what the rules of evidence shall be in criminal cases in the courts of the United States but simply to show what the common law is in the jurisdiction where the trial was had.

[3] Counsel for Maxey, at the time he objected to the competency of Copeland as a witness, stated that the witness had been convicted of a felony and offered the record of his conviction and sentence. We think it is perfectly fair to assume that the record showed that the crime for which Copeland was convicted and sentenced was a felony, as there seems to have been no objection made upon that ground. We are not confined to this view of the matter, however, as counsel stated that Copeland had been sentenced to 15 months in the penitentiary at Atlanta, Ga. Section 335 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. at L. 1152 [U. S. Comp. St. Supp. 1911, p. 1687]) reads as follows:

"All offenses which may be punished by death, or imprisonment for a term exceeding one year, shall be deemed felonies. All other offenses shall be deemed misdemeanors."

We are obliged to assume, therefore, that the crime of which Copeland was convicted and sentenced was a felony.

[4, 5] And we will now proceed to inquire whether this conviction and sentence rendered Copeland infamous and therefore disqualified him as a witness under the rule of the common law.

In Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89, Mr. Justice Gray, in delivering the opinion of the court holding that an offense punishable by confinement in the penitentiary at hard labor was an infamous offense within the meaning of the fifth amendment, said:

"Mr. William Eden (afterward Lord Auckland) in his Principles of Penal Law, which passed through three editions in England and at least one in Ireland within six years before the Declaration of Independence, observed: 'There are two kinds of infamy; the one founded in the opinions of the people respecting the mode of punishment; the other in the construction of law respecting the future credibility of the delinquent.' Eden's Principles of Penal Law, c. 7, § 5.

"At that time it was already established law that the infamy which disqualified a convict to be a witness depended upon the character of his crime and not upon the nature of his punishment. Pendock v. McKinder, Willes, 665; Gilb. Ev. 143; 2 Hawk. c. 46, § 102; The King v. Priddle, 1 Leach (4th Ed.) 442. The disqualification to testify appears to have been limited to those adjudged guilty of treason, felony, forgery, and crimes injuriously affecting by falsehood and fraud the administration of justice, such as perjury, subordination of perjury, suppression of testimony by bribery, conspiring to accuse one of crime, or to procure the absence of a witness, and not to have been extended to cases of private cheats, such as the obtaining of goods by false pretenses, or the uttering of counterfeit coin or forged securities. 1 Greenl. Ev. § 373; Utley v. Merrick, 11 Metc. [Mass.] 302; Fox v. Ohio, 5 How. 410, 433, 434 [12 L. Ed. 213]. * * *

"The remaining question to be considered is whether imprisonment at hard labor for a term of years is an infamous punishment. * * *

"For more than a century, imprisonment at hard labor in the state prison or penitentiary or other similar institution has been considered an infamous punishment in England and America."

In Mackin v. United States, 117 U. S. 348, 6 Sup. Ct. 777, 29 L. Ed. 909, Ex parte Wilson, supra, was followed.

Here we have a witness shown to have been convicted and sentenced for a felony to which an infamous punishment was attached. The question now presented for decision is: Was Copeland disqualified as a witness under the rule of the common law? The crimes, a conviction and punishment for which would disqualify a witness at common law, are generally enumerated as follows: Treason, felony, and the crimen falsi.

[6] The crimen falsi of the common law not only involved the charge of falsehood but also is one which may injuriously affect the administration of justice by the introduction of falsehood and fraud. Greenl. Ev. § 373; Wigmore on Evidence, vol. 1, §§ 519, 520. In a note to section 520, Wigmore on Evidence, Mr. Wigmore says:

"This topic, being practically almost obsolete and destined soon to become entirely so, may be here sufficiently expounded by quoting the words of Professor Greenleaf, which have served to guide our courts in their rulings from 1842."

We are not unmindful that the trend of modern opinion, so far as the disqualifications of witnesses are concerned, is toward removing the disqualifications and permitting the jury to weigh the testimony

of the witnesses in connection with their character and antecedents; but this court has' no power to remove the disqualifications of the common law, the power to do so being with Congress.

It is urged in the brief of counsel for the United States that Congress has passed no law making the conviction of crime a disqualification. This is an erroneous view to take of the matter. The common law prevails until Congress shall decide otherwise. The courts of the United States were organized and their jurisdiction defined, but the matter of the competency of witnesses has never been legislated upon by Congress except as to civil cases, and there is no rule upon the subject unless we go to the common law. Other errors have been assigned, but as they will probably not arise again we do not deem it necessary to consider them.

We think the court erred in permitting Copeland to testify, and the judgment of conviction is therefore reversed and a new trial ordered.