### ROSEN et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 14, 1916.)

#### No. 43.

WITNESSES ⊙═48(2)—COMPETENCY—PERSONS CONVICTED OF CRIME.

One convicted of forgery in the state court while a minor, and sentenced to the reformatory for indeterminate sentence, is a competent witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 111; Dec. Dig. ⊙═48(2).]

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of New York.

Theodore S. Rosen and Abraham Wagner were convicted of tampering with the United States mail, and they bring error. Affirmed.

Meier Steinbrink, of Brooklyn, N. Y., for plaintiff in error Rosen.
Bick & Freedman, of Brooklyn, N. Y., for plaintiff in error Wagner.
Melville J. France, U. S. Atty., of Brooklyn, N. Y.

Before COXE, WARD, and HOUGH, Circuit Judges.

COXE, Circuit Judge. On the trial of Rosen and Wagner, indicted for tampering with the United States mail, a witness named Broder was called by the government. He was jointly indicted with Rosen and Wagner and pleaded guilty. The record of his conviction in the General Sessions of New York of the crime of forgery in the second degree was offered in evidence. Objection was taken by defendants to Broder's competency as a witness but it was overruled. Was Broder a competent witness? He was at the time of his trial about 18 years of age and was sent to the Elmira Reformatory. No time limit was fixed by his sentence. The trial judge in the case at bar considered it the equivalent of a suspended sentence. We are unable to find an authority exactly in point but we think the decision in the

court below was in accordance with the trend of modern opinion. Broder was not of age at the time and was convicted of the crime of forgery. Sending him to Elmira was for the purpose of reforming him if possible and should not have the stigma of a prison sentence for a term of years. The theory upon which Elmira was founded and is operated was to reform and save young men who have, perhaps, thoughtlessly entered upon a career of wrongdoing. It is a school, and reformatory; it is not a prison. It would be a misfortune if it were held that proof of a sentence to Elmira alone disqaulifies a witness and stigmatizes him for all time a person unworthy of credence.

The raison d'etre of the reformatory is to bring about the direct opposite of this: It is to reform and not to punish; to uplift, encourage and help the young men sent there.

We know of no case where a commitment to Elmira has been held to disqualify a witness and see no reason why an exception should be made of the present case.

The tendency of modern thought is towards the abolition of the archaic rules which undertook to declare, arbitrarily, who were and who were not entitled to credence as witnesses and who should be absolutely debarred from taking the stand. All this is changed and now in most enlightened and progressive jurisdictions the tendency is to receive all the testimony bearing upon the issue, irrespective of the character of the witness who gives it. Proof of the commission of a crime discredits a witness but it does not absolutely exclude him from the witness stand.

The judgment is affirmed.

HOUGH, Circuit Judge, concurs in result.

WARD, Circuit Judge (dissenting). The question in this case is purely one of evidence, viz., Did the judgment of conviction of Broder in the courts of the state of New York of the crime of forgery on his own confession make him incompetent as a witness in a criminal action in the District Court of the United States sitting in the state of New York? It has been frequently decided by the Supreme Court that the laws of the state in which the action is tried as to evidence do no apply to criminal cases in the courts of the United States. There being no federal statute regulating the subject, it must be determined in the federal courts by the common law existing in the state of New York at the time of the enactment of the Judiciary Act in 1789. United States v. Reid, 12 How. 361, 13 L. Ed. 1023. See, also, Moore v. United States, 91 U. S. 271, 23 L. Ed. 346; Schreiber v. Sharpless, 110 U. S. 76, 3 Sup. Ct. 423, 28 L. Ed. 65; United Copper Securities Co. v. Amalgamated, 232 Fed. 574, 146 C. C. A. 532. By that common law witnesses who were infamous were incompetent, and those who had been convicted of treason, felony, or crimen falsi were infamous. Greenleaf on Evidence, § 373.

In Logan v. United States, 144 U. S. 263, 298–303, 12 Sup. Ct. 617, 36 L. Ed. 429, it was held that the competency of witnesses in a criminal case tried in the Circuit Court of the United States for the Northern District of Texas was governed, not by the law of Texas,

but by the common law. A witness who had been convicted of felonious homicide in the courts of North Carolina was held competent, apparently on the ground that any disqualification created by the laws of North Carolina could have no effect beyond the limits of that state. A witness who had been convicted of larceny in the courts of Texas was also held competent because he had received a full and unconditional pardon from the Governor. If the question of competency was to be decided by the common law, as the court held, it would seem as if both witnesses should have been held incompetent, because the judgment of conviction in each case showed that the witness had been convicted of an offense which was a felony at common law rendering him infamous. However this may be, it cannot be assumed that the court intended to depart from its prior decisions.

There is no question in this case of enforcing the judgment of the state court. It has been completely enforced. The question is as to its effect when offered in evidence. That a judgment of conviction in a state court should have one quality as evidence in the state courts and quite a different one in the federal courts is not illogical. When the sovereigns differ, one must yield; and the Supreme Court has persistently held that Congress did not intend the states to control in respect to evidence in criminal cases. Broder, the witness in this case, had been convicted in a court of the state of New York of what was at common law crimen falsi, viz., forgery. As the judgment had not been reversed and he had not been pardoned, his testimony should have been excluded. Such is the rule in the federal courts, though not in the courts of New York. If it is antiquated, and the judgment of conviction should go only to the credibility of a witness, Congress and not the courts should make the change. This was the view taken in a similar case by the Circuit Court of Appeals for the Eighth Circuit in Maxey v. United States, 207 Fed. 327, 125 C. C. A. 77.