### LOUIE DING v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. January 7, 1918.)

No. 2921.

WITNESSES ⬡⟫44—COMPETENCY—RULES.

While, under Judiciary Act, Act Sept. 24, 1789, c. 20, 1 Stat. 73, a change in the state rules as to competency of witnesses cannot affect the rules as to competency in the federal court, the rules of the states as to competency of witnesses in force when the federal courts sitting within the borders of such state were created should govern; hence the common-law rule that a witness is incompetent who has no belief in a Supreme Being who will reward or punish for acts in this world does not apply in the Federal District Court for Washington, as Const. Wash. art. 1, § 11, declares that no person shall be incompetent as a witness in consequence

of his opinion in matters of religion, and Laws Wash. 1854, p. 186, §§ 289–293, now found in Ballinger's Ann. Codes & St. §§ 5990–5993, which was in force when the federal court was first established in Washington, makes incompetent as witnesses only persons of unsound mind, those intoxicated when produced, and children under 10 years of age incapable of receiving correct impressions.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Louie Ding was convicted of conspiring with others to violate Act Cong. May 6, 1882, c. 126, § 11, 22 Stat. 61, as amended by Act July 5, 1884, c. 220, 23 Stat. 117 (Comp. St. 1916, § 4298), by bringing into the United States alien Chinese persons not entitled to be or remain in the United States, and he brings error. Reversed and remanded for new trial.

Walter S. Fulton and William R. Bell, both of Seattle, Wash., for plaintiff in error.

Clay Allen, U. S. Atty., and Winter S. Martin, Asst. U. S. Atty., both of Seattle, Wash.

Before GILBERT and HUNT, Circuit Judges, and DIETRICH, District Judge.

HUNT, Circuit Judge. Louie Ding asks reversal of judgment of conviction for conspiring with certain others to violate section 11 of the Act of Congress of May 6, 1882, as amended by Act of July 5, 1884, the purpose being to bring into the state of Washington from British Columbia certain alien Chinese persons not lawfully entitled to be or remain in the United States.

William Kirkland was indicted with Ding and Toy and others, but having pleaded guilty was not on trial. The government called Kirkland as a witness, but before he was sworn counsel for the defendant Toy, also on trial, objected upon the ground that Kirkland did not believe in "a Supreme Being who would reward or punish him for his acts in this world." After examination by the court it was held that the question of competency of the witness was to be determined by the common law and that "inasmuch as the witness did not believe in a God who is the rewarder of truth and the avenger of falsehood he could not testify." Thereafter counsel for the defendant Ding offered Kirkland as a witness, but the court declined to allow him to testify unless the government agreed. Counsel for the government objected, and the court declined to allow him to testify.

We are of the opinion that the exclusion of the offered witness was erroneous, in that the court should not have determined the competency of the witness by the rules of the common law as in force in the respective original states of the Union when the Judiciary Act of 1789 was passed, but should have applied the rules which governed the competency of witnesses and the admissibility of evidence in force within the territory of Washington when that territory was admitted to the Union. In United States v. Reid, 12 How. 361, 13 L. Ed. 1023, the Supreme Court, after commenting upon the fact that Judiciary

Act 1789, § 29, provided for the manner of summoning the jurors and that the jurors shall have the same qualifications as are requisite for jurors by the law of the state of which the jurors are citizens observed that neither the Judiciary Act nor the Crimes Act of 1790 (Act April 30, 1790, c. 9, 1 Stat. 112) makes any express provision concerning the mode of conducting the trial after the jury are sworn. The court thought that it must have been the intention of Congress to refer the courts "to some known and established rule which was supposed to be so familiar and well understood in the trial by jury that legislation upon the subject would be deemed superfluous," and that such rule was that which was then known to be in force in the *respective* states (italics ours) and which obtained in daily and familiar practice in the state courts. Chief Justice Taney also said that as the courts of the United States were, in respect to qualifications of jurors and the mode of selecting them, to be governed by the laws of the several states, "it would seem necessarily to follow that the same principles were to prevail throughout the trial, and that they were to be governed in like manner in the ulterior proceedings after the jury was sworn where there was no law of Congress to the contrary."

We have not lost thought of the further expression of the court that "the rules of evidence in criminal cases are the rules which were in force in the respective states when the Judiciary Act of 1789 was passed," and that no law of a state made since 1789 could affect the mode of proceeding or the rules of evidence in such cases. But as in 1789 there were no known and established local rules of evidence in force in what afterwards became the territory of Washington, it would seem unsuitable to apply a rule which was in force in any of the original states. On the other hand, there is little difficulty in ascertaining the rules which were in force and which the federal courts found were known and established when the new state was taken into the Union. And the principle of the Reid Case, supra, is but adhered to in following such a practice. It could readily be put into use in this matter, for it appears that in the territory of Washington the only persons incompetent to testify were those of unsound mind, or who were intoxicated when produced as witnesses, or were children under 10 years of age and incapable of receiving just impressions or relating them justly truly. Laws of Washington 1854, p. 186, §§ 289–293; Code of Washington 1881, §§ 388–391; Ballinger's Annotated Codes, §§ 5990–5993. The Constitution of the state (section 11 of article 1) provides:

"No religious qualifications shall be required for any public office or employment; nor shall any person be incompetent as a witness or juror in consequence of his opinion in matters of religion, nor be questioned in any courts of justice touching his religious belief to affect the weight of his testimony."

We are not without authority in accord with our opinion. In Withaup v. United States, 127 Fed. 530, 62 C. C. A. 328, the Court of Appeals for the Eighth Circuit through Judge Van Devanter cited the Reid Case, supra, and Logan v. United States, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429, and held that admissibility of certain evidence offered in a criminal case tried in the state of Colorado was

governed, not by the statute of Colorado, enacted in 1893 (Laws Colo. 1893, p. 264), but by the common law, which by reason of the territorial act of 1861 (Laws Colo. 1861, p. 335) was the law of Colorado in 1876, when Colorado was admitted into the Union, and that such rules applied as established and known in Colorado.

Logan v. United States, supra, presented the question of the competency of witnesses in a criminal case tried in the federal courts in Texas, and it was held that the rule of decision should be the common law rather than the law of Texas which had been in force before the passage of a statute which had been referred to and was in force at the time of the admission of Texas into the Union as a state. If, as pointed out by Judge Ward in a dissenting opinion in Rosen v. United States, 237 Fed. 810, 151 C. C. A. 52, the question of competency was to be determined under the common law, it would seem as if the witnesses called should have been held incompetent upon the ground that the judgment of conviction in each case showed that the witnesses had been convicted of common-law felonies. In Knoell v. United States, 239 Fed. 16, 152 C. C. A. 66, the Circuit Court of Appeals of the Third Circuit held that, in the absence of a federal statute on the subject, the competency of a witness stood or fell by the law of Pennsylvania at the date of the first Judiciary Act; that is, the state having then no relevant statute, by the rules of the common law. Logan v. United States and Reid v. United States, supra, were cited.

But we do not understand that in the general statement, to the effect that the rules of evidence in criminal cases are the rules which were in force in the respective states when the Judiciary Act of 1789 was passed, the Supreme Court ever intended to establish a guide which would prevent the application of the rule as we have before indicated; the test is what local law obtained at the time of the creation of the state, rather than that which obtained at the time of the enactment of the Judiciary Act of 1789. Wigmore on Evidence, § 6 (see notes 9 and 10). In Maxey v. United States, 207 Fed. 327, 125 C. C. A. 77, the .Circuit Court of Appeals for the Eighth Circuit considered the question of competency of a witness who had been convicted of a felony, and who was offered as a witness in the trial in the federal court in the district of Arkansas, and it was held that the competency of the witness was to be determined by the common law of the state where the trial was had, as it was when the United States courts were established, except where Congress provided otherwise.

While the decisions upon the question discussed are not as clear as they might be, yet, when we accept the doctrine of Reid v. United States, supra, to be that neither the common law as it existed at the time of the emigration of the colonists nor the rule which at that time prevailed in England is controlling upon the subject, but that the known rules which were in force in the respective states at the time of their creation are, unless Congress has specially otherwise provided, it leads to the view that the court should have followed the rule which the local courts adopted in their usual daily practice when the state of Washington was admitted into the Union.

The judgment is reversed, and the cause remanded for a new trial