### RENDLEMAN v. UNITED STATES. *

(Circuit Court of Appeals, Ninth Circuit. March 21, 1927.)

No. 4977.

Courts ⊙═349—State rules as to competency of witnesses in force at creation of federal courts within state control in federal court (Judiciary Act 1789).

Although under Judiciary Act Sept. 24, 1789 (1 Stat. 73), change in rules of state as to competency of witnesses cannot affect rules as to their competency in federal court, nevertheless the rules of state as to competency of witnesses in force when federal courts, sitting within the

*Rehearing denied May 2, 1927.

borders of such state, were created, control; the test being as to what local law obtained at creation of state, and not at time of enactment of Judiciary Act.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Howard E. Rendleman was convicted of the unlawful possession of morphine, and of having dealt in morphine without having registered or paid a special tax, and he brings error. Reversed and remanded.

Warren Hardy and Henry Clay Agnew, both of Seattle, Wash., for plaintiff in error.

Thos. P. Revellee, U. S. Atty., and Paul D. Coles, Asst. U. S. Atty., both of Seattle, Wash.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

HUNT, Circuit Judge. On the trial of Rendleman, plaintiff in error, who was convicted of the unlawful possession of morphine, and of having dealt in morphine without having registered or paid a special tax as required by law, the court ruled that Rendleman's wife was not a competent witness in his behalf. Review of the ruling is sought.

The case of Louie Ding v. United States (C. C. A. 1918) 247 F. 12, presented the question of the competency of a witness who did not believe in a Supreme Being who would reward or punish him for his acts in this world. We held that, while under the Judiciary Act of September 24, 1789, ch. 20, 1 Stat. 73, a change in the rules of the state as to the competency of witnesses cannot affect the rules as to their competency in the federal court, nevertheless, the rules of the state as to competency of witnesses in force when the federal courts, sitting within the borders of such state, were created, should control, and that therefore the common-law rule that the witness offered was incompetent did not apply in the federal court in Washington, where the statute of the state in force when the federal court was there established made incompetent as witnesses only persons of unsound mind, those intoxicated when produced, and children under ten years of age incapable of receiving correct impressions. The test applied was what local law obtained at the time of the creation of the state, not what the law was at the time of the enactment of the Judiciary Act of 1789. Withaup v. United States (C. C. A.

1903) 127 F. 530; Brown v. United States (C. C. A. 1916) 233 F. 354, L. R. A. 1917A, 1133

Upon the same day that we handed down the decision in the Louie Ding Case the Supreme Court decided Rosen v. United States, 245 U. S. 467, 38 S. Ct. 148, 62 L. Ed. 406, which arose in New York. The question there considered was the competency of a government witness who had pleaded guilty of a felony and was serving sentence. It was argued that by the common law as administered in New York in 1789 a person convicted of forgery and sentenced was thereby made incompetent as æ witness until pardoned. The court adopted the modern view by holding the witness was competent, and said the decisions in Logan v. United States (1891) 144 U. S. 263, 12 S. Ct. 617, 36 L. Ed. 429, and in Benson v. United States (1892) 146 U. S. 325, 13 S. Ct. 60, 36 L. Ed. 991, had "seriously shaken" the authority of United States v. Reid, 12 How. 361, 13 L. Ed. 1023, decided in 1851, where it was held that the competency of witnesses in criminal trials in federal courts was to be determined by the rules of evidence which were in force in the respective states when the Judiciary Act of 1789 was passed. Referring to earlier decisions, the court said: "In the almost twenty years which have elapsed since the decision of the Benson Case, the disposition of courts and of legislative bodies to remove disabilities from witnesses has continued, as that decision shows it had been going forward before, under dominance of the conviction of our time that the truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of such testimony to be determined by the jury or by the court, rather than by rejecting witnesses as incompetent, with the result that this principle has come to be widely, almost universally, accepted in this country and in Great Britain."

The opinion made no reference to Hendrix v. United States (1911) 219 U. S. 79, 31 S. Ct. 193, 55 L. Ed. 102, where, in reviewing a conviction of murder in Texas, the Supreme Court dismissed the assignment that the wife of Hendrix was not allowed to testify as to certain matters in his behalf, with the brief statement that the ruling was not error, citing Logan v. United States, supra.

In Greer v. United States (1918) 245 U. S. 559, 38 S. Ct. 209, 62 L. Ed. 469, decided a few weeks after Rosen v. United States, supra, defendant was convicted of introducing whisky from without the state into that part of Oklahoma that formerly was within the Indian Territory. Greer contended that the trial court was bound by the rules of evidence as they stood in 1789, but the court, through Justice Holmes, said "that those rules would not be conclusive is sufficiently shown by Rosen v. United States," and affirmed the conviction.

The question of the right of the wife to testify in her husband's behalf was involved in Jin Fuey Moy v. United States (1920) 254 U. S. 189, 41 S. Ct. 98, 65 L. Ed. 214, upon a review of a conviction in the federal court in Pennsylvania. Regarding the point as hardly requiring mention, the court proceeded upon the concession that the wife was not a competent witness for all purposes; her evidence not having been admissible at the time of the Judiciary Act. For this statement Logan v. United States, supra, and Hendrix v. United States, supra, were the only cases cited. The court added: "But, it is said, the general rule does not apply to exclude the wife's evidence in the present case because she was offered not 'in behalf of her husband,' that is, not to prove his innocence, but simply to contradict the testimony of particular witnesses for the government who had testified to certain matters as having transpired in her presence. The distinction is without substance. The rule that excludes a wife from testifying for her husband is based upon her interest in the event, and applies irrespective of the kind of testimony she might give."

No reference was made to the Rosen Case, decided three years previously, although, as we have said, the opinion in the Rosen Case stated the contention that under the common law as administered in New York in 1789 the person called as a witness was incompetent. It seems to us that, if the Jin Fuey Moy Case is general as to all federal criminal trials where a wife is called to testify for her husband, then the principle recognized in Rosen v. United States has been restricted, and the District Court held correctly in the case now before us. On the other hand, if the Jin Fuey Moy Case is applicable only to Pennsylvania, where the wife's evidence was not admissible at the time of the first Judiciary Act, then the rule of the Rosen and Louie Ding Cases obtains, and the lower court was in error.

Considering the several cases, our judgment is that it was not intended by the Jin Fuey Moy Case to depart from the broader

rule laid down in the Rosen decision, where the question was disposed of by overruling the common law practice.

Turning to some of the recent decisions of the Courts of Appeals, we find that in the Fifth Circuit in McCoy v. United States (C. C. A. 1918) 247 F. 861, the court held as we did in the Ding Case.

In the Fourth Circuit, in Krashowitz v. United States (C. C. A. 1922) 282 F. 599, on writ of habeas corpus to the District Court in West Virginia, it was held that, upon the authority of the Jin Fuey Moy Case, defendant's wife could not testify in his behalf.

In Neal v. United States (C. C. A. 1924) 1 F.(2d) 637, upon review of a conviction had in the federal court in Oklahoma, the Court of Appeals for the Eighth Circuit held that the rules of evidence governing federal courts in criminal cases arising in the Western District of Oklahoma are those which were in force in Oklahoma Territory at the time of the admission of the territory into the Union. As authority, the court cited Withaup v. United States, supra; Logan v. United States, supra; United States v. Reid, supra, and Ding v. United States, supra; 1 Wigmore on Evidence, § 6.

In Parker v. United States (C. C. A. 1925) 3 F.(2d) 903, upon application for writ of habeas corpus in proceedings instituted to remove a man from California to the District of Columbia for trial, we held that whether the wife was a competent witness against her husband under the laws of California was not of vital importance, for the reason that competency of witnesses in criminal trials in federal courts is governed by the common law, not by the law of the state, except where Congress has legislated specifically upon the subject.

In Liberato v. United States (C. C. A. 1926) 13 F.(2d) 564, defendant was convicted of conspiracy in the District Court of Washington. Upon the trial the wife of defendant was called to testify in defendant's behalf. The record shows that, upon objection of the prosecuting attorney, defendant's counsel conceded that under the general rule she could not testify for or against her husband, but argued that he wished to prove certain physical facts which the wife knew of; thus assuming a position like that taken by defendant in the Jin Fuey Moy Case. The trial court held that she could not testify for or against her husband in any respect. Upon writ of error, this court accepted the admission of counsel and followed the Jin Fuey Moy Case.

After re-examination of the question, we conclude that the decision in the Ding Case is correct and in accord with the Rosen Case, and that any rulings that we may have made inconsistent therewith must be modified.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.