## BROWN et al. v. UNITED STATES.

### (Circuit Court of Appeals, Sixth Circuit.  May 12, 1916.)

### No. 2860.

COURTS ⬤╍349—PROCEDURE—WITNESSES—COMPETENCY—COMITY.

As the federal courts are courts of an entirely different sovereignty and are wholly independent of the states, a conviction of an infamous crime in the state court rendering a person incompetent to testify in the state court does not render him incompetent to testify in the federal courts any more than it would in the courts of a foreign jurisdiction, for the federal courts, while following the state laws, do not give effect to a conviction by a state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 925; Dec. Dig. ⬤╍349.]

In Error to the District Court of the United States for the Middle District of Tennessee; John E. McCall, Judge.

E. P. Brown and another were convicted of crime, and they bring error.  Affirmed.

Lewis Tillman, of Nashville, Tenn., for plaintiffs in error.

Lee Douglas, U. S. Atty., of Nashville, Tenn.

Before WARRINGTON and KNAPPEN, Circuit Judges, and KILLITS, District Judge.

KILLITS, District Judge.  Plaintiffs in error, E. P. Brown and J. R. Harrell, were convicted after trial upon an indictment in four counts, three of which charged assault and battery in various forms of allegation upon one Clifford Johnson committed on the grounds pertaining to the post office building at Nashville, Tenn., and over which the United States had exclusive jurisdiction.  The fourth count charged that defendant "unlawfully did knowingly and willfully obstruct and retard one Clifford Johnson, * * * a regularly employed driver of a regular mail wagon, * * * while the said Clifford Johnson was then and there engaged in transferring and delivering the United States mail from a mail wagon to the post office of the United States at Nashville aforesaid."  The only alleged error presented for the consideration of this court is that predicated upon the admission of the testimony of Johnson himself.  It is conceded that Johnson's evidence is indispensable to conviction, and that, if he were not a competent witness, the case must fail.

It appears from the record that in 1905 Johnson was convicted in a state court at Nashville upon an indictment reading as follows:

"The grand jurors for the state of Tennessee duly elected, impaneled, sworn and charged to inquire for the body of the county of Davidson, and state aforesaid, upon their oath aforesaid, present: That Clifford Johnson, of said county heretofore, to wit, on the ———— day of June, 1905, with force of arms, in the county aforesaid, unlawfully, feloniously and violently, did break and enter in the day time the dwelling house of W. M. Frank with the unlawful and felonious intent then and there and therein to commit a felony, to wit, larceny, and did then and there and therein steal, take, carry away one ring of the value of six dollars, the property of W. M. Frank, of said county,

then and there being found, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the state."

Upon his conviction the following judgment was imposed:

"It is therefore considered by the court that defendant for his said offense shall be confined in the state penitentiary for a period of five (5) years, commencing on the day of his delivery to the keeper thereof, subject to the rules and regulations of said institution, that he be rendered infamous, incompetent as a witness in any court of justice in the state, incapable of exercising the election franchise, or of holding any office of honor, profit, or trust in the state."

[1, 2] It is urged in behalf of plaintiffs in error that this record rendered Johnson wholly incompetent as a witness for the government, because of the rule that the competency of witnesses in criminal cases is to be determined by the law of the state in which the federal court is sitting as the state law was when the Judiciary Act of 1789 was passed (Act Sept. 24, 1789, c. 20, 1 Stat. 73). United States v. Hall (D. C.) 53 Fed. 352; United States v. Reid, 12 How. 361, 13 L. Ed. 1023; Logan v. United States, 144 U. S. 263–302, 12 Sup. Ct. 617, 36 L. Ed. 429.

It is conceded in this case that the common law is the rule of decision. North Carolina had adopted the common law prior to the Revolution, and, when the Judiciary Act was passed, the country now comprising the state of Tennessee was a part of North Carolina. By common law petit larceny was a felony, but house-breaking in the daytime was not even a crime. Judgment upon conviction of a felony made the convict infamous, with the result that he was incompetent as a witness until he was relieved from the burden of infamy in some approved way.

A question was raised whether the indictment charged a crime conviction of which rendered the convict infamous at common law, but the government insists upon Johnson's competency upon a broader ground than that of a technical insufficiency of pleading. This is that the testimonial disqualification is operative only within the jurisdiction of the sovereign whose court pronounced the judgment culminating in the conviction of an infamous crime; in other words, that only a judgment upon conviction in a federal court of a crime infamous at common law works incompetency in the federal courts.

Greenleaf (Evidence, § 375) thus speaks of the rule settled in his day, and yet unweakened by criticism:

"We have already remarked, that no person is deemed infamous in law, until he has been legally found guilty of an infamous crime. But the mere verdict of the jury is not sufficient for this purpose; for it may be set aside, or the judgment may be arrested, on motion for that purpose. It is *the judgment*, and that only, which is received as the legal and conclusive evidence of the party's guilt, for the purpose of rendering him incompetent to testify. And it must appear that the judgment was rendered by a court of competent jurisdiction."

This results from the distinction between disqualification arising from deficiencies of mind or maturity or voluntarily assumed, as in coverture or because of views on religious questions, and that imposed by positive law, the latter not being regarded established until a solemn judicial determination is had. Chamberlayne, Modern Law of Evi-

dence, § 3664, and cases cited. Greenleaf further says (Evidence, § 376):

"Whether judgment of an infamous crime, passed by a foreign tribunal, ought to be allowed to affect the competency of the party as a witness in the courts of this country, is a question upon which jurists are not entirely agreed. But the weight of modern opinion seems to be that personal disqualifications not arising from the law of nature but from the positive law of the country, and especially such as are of a penal nature, are strictly territorial, and can not be enforced in any country other than that in which they originate."

This doctrine is supported by reasoning so cogent and conclusive, offered by the Supreme Judicial Court of Massachusetts through Chief Justice Parker (Commonwealth v. Green, 17 Mass. 515, 539–548) that any other seems of little weight. At any rate, it is but the application of the principle, universally adhered to, that the penalties adjudged by one jurisdiction will not be enforced by another. This, as elsewhere, was early the rule in Tennessee (Dickson v. Dickson, 1 Yerg. 110, 24 Am. Dec. 444), and, as a general proposition, is, of course, the rule in federal courts.

The principle that, until federal legislation is had to modify the practice, "the rules of evidence in criminal cases" in the federal courts "are the rules which were in force in the respective states when the Judiciary Act of 1789 was passed," is reasoned out by Chief Justice Taney (12 How. 364, 365, 13 L. Ed. 1023) in this language:

"But neither of these acts make any express provision concerning the mode of conducting the trial after the jury are sworn. They do not prescribe any rule by which it is to be conducted, nor the testimony by which the guilt or innocence of the party is to be determined. Yet, as the courts of the United States were then organized, and clothed with jurisdiction in criminal cases, it is obvious that some certain and established rule upon this subject was necessary to enable the courts to administer the criminal jurisprudence of the United States. And it is equally obvious that it must have been the intention of Congress to refer them to some known and established rule, which was supposed to be so familiar and well understood in the trial by jury that legislation upon the subject would be deemed superfluous. This is necessarily to be implied from what these acts of Congress omit, as well as from what they contain. * * * And the only known rule upon the subject which can be supposed to have been in the minds of the men who framed these acts of Congress, was that which was then in force in the respective states, and which they were accustomed to see in daily and familiar practice in the state courts."

As to states whose territories were not within the boundaries of the Union as they were in 1789, the rule is that the law of the state when it was admitted governs. Logan v. United States, 144 U. S. 263–303, 12 Sup. Ct. 617, 36 L. Ed. 429.

The language above quoted from the decision in Reid's Case carries no stronger suggestion than that a rule of decision, simply, is established; it is not potent to impose upon trial courts an obligation to adopt the results reached by state courts in any specific instance, through the application of the local rule of practice which the local federal court should, in instances before it, make its own. The effect of the doctrine, summarized by Prof. Greenleaf, that it is nothing less than the judgment of conviction making infamy, which is effective to disqualify, part of the penalty, is such that, if we hold that

a court of another sovereignty than that of the tribunal rendering the judgment, must also, ipso facto, regard the convict as disqualified, we are not simply applying a rule of decision but are enforcing a penal judgment.

Federal practice enforces the principle that a judgment of infamy has, at the best, no extraterritorial applicability. In Logan v. United States, supra, it was held that one convicted of perjury in North Carolina, and thereby incompetent as a witness in that state, was not incompetent in the federal court of another state, although therein the common-law rule of incompetency because of conviction for an infamous crime also prevailed when the latter state was admitted to the Union.

In this Logan Case, tried in the Northern district of Texas, two convicts of the crime of perjury were held competent as witnesses notwithstanding the common law in force when Texas was admitted— one, Martin, because to exclude him would be to give extraterritorial effect to a penalty adjudged by the courts of North Carolina; the other, Spear, because (144 U. S. 303, 12 Sup. Ct. 617, 36 L. Ed. 429) his disability had been removed by the pardon of the Governor of Texas, in a court of which state he was convicted. Nothing in this decision militates against the contention of the government in the instant case that the rule of exclusion applies in federal courts to federal convicts only. The point was not before the court. For Spear's competency the court manifestly did not look beyond the fact of his pardon, which, the court had already held (Boyd v. United States, 142 U. S. 450, 12 Sup. Ct. 292, 35 L. Ed. 1077), was sufficient to remove the disability.

As it appears from the above quotation the principle of United States v. Reid was not announced by Chief Justice Taney in language which affects the government's contention, and the question is therefore without adjudication so far as the federal courts are concerned, and turns wholly upon the consideration whether state and federal courts, sitting in the same state, and having the same territorial jurisdiction, are foreign to each other in the sense that the courts of two states are foreign.

The essential distinction between, the government of the United States and that of any state, as two independent political identities, has been frequently pointed out in the decisions of the Supreme Court. Fox v. Ohio, 5 How. 432, 12 L. Ed. 213; Moore v. People, 14 How. 17, 14 L. Ed. 306; Slaughter-House Cases, 16 Wall. 36, 21 L. Ed. 394; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; Ex parte Siebold, 100 U. S. 371, 25 L. Ed. 717. The last exposition of the subject is found in Twining v. New Jersey, 211 U. S. 78, 29 Sup. Ct. 14, 53 L. Ed. 97. The rule arises most frequently, as in cases just cited, where there is an apparent conflict of law between a state and the federal government touching crimes. The absolute separation of the two sovereignties, with independent jurisdictions unburdened with responsibilities one to the other, save as occasionally the paramount authority of the federal power is called into operation, is certainly emphasized by the fact that, upon the same state of facts, a wrongdoer may be called upon to answer to both governments. A

similar line of cases exists asserting the independence of the federal judiciary in its jurisdiction of civil causes of action. We need not cite other than Supreme Court cases, Stanton v. Embry, 93 U. S. 548, 23 L. Ed. 983, Gordon v. Gilfoil, 99 U. S. 168, 25 L. Ed. 383, and Hunt v. New York Cotton Exchange, 205 U. S. 322, 27 Sup. Ct. 529, 51 L. Ed. 821, all to the point that the pendency of a prior suit in a state court is not the ground of abatement of an action on the same state of facts between the same parties in the federal court, or vice versa, the decisions turning on the principle that the two courts are foreign as the creatures of different governments. The language of these decisions leaves no room for the feeling that any interdependence exists between a state and the federal government which affects the identification of either as a sovereignty entirely apart from the other. Whenever a decision seems to bridge this distinction it will be found that its aim and effect is either to adopt a rule of decision, or, without affecting the principle of distinct and independent sovereignties, to harmonize matters of practice with the practice of local state courts as far as possible *under federal legislation.*

The state courts have already begun to assert their independence of federal courts within their own territorial jurisdictions on precisely the point now under consideration by us; that is, it has already been decided that, although the state withholds testimonial capacity from one convicted of an infamous crime in its own court, it will not to that end give effect to a judgment of a local federal court. This was the decision of the Supreme Court of Appeals of Virginia in Samuels v. Commonwealth, 110 Va. 901, 66 S. E. 222, 19 Ann. Cas. 380. In this case, the court held that one offered as a witness who had been adjudged guilty of perjury by a federal court sitting in Virginia was not disqualified thereby as a witness in the state court, although by statute, as well as by common law within Virginia, one convicted of perjury was incompetent to testify, the court holding that very clearly neither the state statute nor the federal statute contemplates imposing or could impose the punishment prescribed by the other and that the courts of neither can take cognizance or punish violations of the statutes of the other, citing In re Loney, 134 U. S. 372, 10 Sup. Ct. 384, 33 L. Ed. 949.

It doubtless has never been thought that a court of one sovereignty within the state might entertain jurisdiction to try an offense against the other sovereignty, but in In re Loney, supra, the distinction was carried further, for there it was held that the courts of a state have no jurisdiction of a complaint for perjury in a contested election case involving a seat in the Congress of the United States, although the false swearing was before a notary public of the state, the court holding that the "power of punishing a witness for testifying falsely in a judicial proceeding belongs peculiarly to the government in whose tribunals that proceeding is had."

The foregoing and other decisions illustrate how consistently federal courts are applying, in various states of fact, the rule of the Supreme Court announced by Justice Johnson in Houston v. Moore, 5 Wheat. 1-69, 5 L. Ed. 19, that:

"In a government formed like ours, where there is a division of sovereignty, and of course, where there is a danger of collision from the near approach of powers to a conflict with each other, it would seem a peculiarly safe and salutary rule, that each government should be left to enforce its own penal laws, in its own tribunals."

In Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89, where the question was whether one imprisoned after conviction upon information was suffering the penalty of an infamous crime and, consequently, under the Fifth Amendment could not have been held to answer without presentment or indictment by a grand jury, the court, discussing the incidents of a conviction for an infamous crime, said (114 U. S. page 423, 5 Sup. Ct. page 938, 29 L. Ed. 89):

"Whether a convict shall be permitted to testify is not governed by a regard to his rights or to his protection, but by the consideration whether the law deems his testimony worthy of credit upon the trial of the rights of others."

The consideration, therefore, whether a federal court should permit any witness to testify is to be referred only to principles interesting that court in its effort to administer justice. It would seem that its freedom in this respect should not be controlled by the judgment of any court other than one within the federal jurisdiction as to any question not governed by established principles or legislative enactment.

Obviously the courts of one state in the Union are regarded as "foreign" to the courts of another, not because of geographical separation, but because they are instrumentalities of independent sovereignties. A District Court of the United States sitting in one state cannot be said to be geographically "foreign" to the state courts of another state for the reason that the sovereignty of which it is a part has geographical extension over the territory of the other state. It is limited, to be sure, to a territorial jurisdiction which may not include the situs of a state court, but it is nevertheless an integral part of a judicial system which extends over the situs of every state court. It is therefore "foreign" to the court of a state beyond its territorial limitations only because its jurisdiction depends upon the question of sovereignty, and it obtains its authority from a sovereign distinct from and independent of that creating the state court. For that reason, for instance in the cases cited above, a federal and a state court of the same state are free, each independent of the other, to punish as an offense against their respective sovereignties, the same act which serves as the predicate of a crime within the definition of the laws of the two sovereignties, respectively, wherefore, technically, at least, the actor may be liable to double punishment.

Therefore, recurring to the case of Logan v. United States, supra, we see no reason whatever to doubt, had the question been raised before it, that the Supreme Court would have ruled that, although Logan was being tried in a Texas federal court, Spear, as a convict of an infamous crime by the judgment of a local state court, was as competent to testify as was Martin, a convict of an infamous crime by the consideration of a court in another state. For the federal court of Texas to have enforced the penalty of Spear's conviction by the state

court of Texas, had the pardon not intervened, in our judgment, would not have been the application of any different principle than would have been employed had it refused Martin's testimony because of his conviction in another state. That the Texas federal court had the same geographical or territorial jurisdiction enjoyed by the state court of Texas brought the former into no closer association with the latter, so far as the question now before this court is concerned, than the federal court of Texas enjoyed with the state court of North Carolina.

It seems to us that, to the doctrine that a judgment of conviction, not mere proof of guilt, is indispensable to disqualification, there is the necessary corollary that the application of the disqualification is left only to the tribunals of the jurisdiction which created it.

The question made by the government in this case is, as we have suggested, one not concluded by specific adjudication; an answer to it favorable to the government's contention comports with the dignity and independence of the federal courts, and is in line with the general principle that courts of one jurisdiction will not enforce the penalties of those of another. The tendency of the courts, wherever possible, is "to enlarge the domain of competency and to submit to the jury for their consideration as to the credibility of the witness those matters which heretofore were ruled sufficient to justify his exclusion." Benson v. United States, 146 U. S. 325, 336–337, 13 Sup. Ct. 60, 64, 36 L. Ed. 991. "This change," says the Supreme Court in this case, "has been wrought partially by legislation and partially by judicial construction. * * * The spirit of this legislation has controlled the decisions of the courts, and steadily, one by one, the merely technical barriers which excluded witnesses from the stand have been removed."

Not simply to follow this tendency, but because the considerations above referred to seem compelling, we conclude that the rule of the Reid Case, announced by Chief Justice Taney, applies only to an instance where the witness tendered is under the conviction of a crime against the United States of that character, which at common law, as established in 1789, rendered infamous one adjudged guilty, and that the rule does not disqualify a witness who is under but the judgment of a state court.

For this reason, without passing on other questions raised, the judgment of the District Court is affirmed, and the petition in error dismissed.

---

⊙══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
Rehearing denied October 9, 1916.