## PAKAS v. UNITED STATES.

### (Circuit Court of Appeals, Second Circuit. February 6, 1917.)

### No. 168.

1. POST OFFICE ☞4, 44—ORDER OF DEPARTMENT—PRIVATE BOXES—CRIMINAL OFFENSE.

Criminal Code (Act March 4, 1909, c. 321, § 194, 35 Stat. 1125 [Comp. St. 1913, § 10364]), imposes a punishment on any one who buys or receives any article, knowing it to have been taken from a letter stolen from an authorized depository for mail matter. Rev. St. § 161 (Comp. St. 1913, § 235), authorizes the head of each department to prescribe requirements not inconsistent with law for the government of his department, and the preservation of the records, papers, and property appertaining to it. An order of the Post Office Department provides that any letter box or other receptacle intended for the receipt or delivery of mail matter on any delivery route is designated a letter box for the receipt or delivery of mail matter, within the meaning of the Criminal Code. *Held*, that the order was within the authority given the Postmaster General, and was not invalid as an attempt to enact a criminal law, so that a person may be convicted for receiving checks, knowing them to have been taken from letters stolen from private boxes attached to residences and apartment houses for the receipt of mail.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 3, 60, 61.]

2. POST OFFICE ☞19—MAIL—RIGHTS OF UNITED STATES—"PROPERTY."

Mail is "property" within Rev. St. § 161 (Comp. St. 1913, § 235), authorizing the head of each department to prescribe regulations for the preservation of the property appertaining to the department, and belongs for certain purposes to the United States.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 25.

For other definitions, see Words and Phrases, First and Second Series, Property.]

3. POST OFFICE ☞1—MAIL—POWERS OF CONGRESS.

Congress has full power to legislate concerning the mail, under its constitutional power to establish post offices and post roads.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 1.]

4. WITNESSES ☞48(1)—COMPETENCY—PREVIOUS CONVICTION.

In a prosecution in the federal courts for crime, one who had been previously convicted in the state court of an infamous crime is a competent witness, though he would not have been at common law, and there is no act of Congress changing that rule.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 109, 110, 113.]

In Error to the District Court of the United States for the Eastern District of New York.

Victor Pakas was convicted of knowingly receiving property stolen from the mails, and he brings error. Affirmed.

Olcott, Gruber, Bonynge & McManus, of New York City (Terence J. McManus and Harold Riegelman, both of New York City, of counsel), for plaintiff in error.

Melville J. France, U. S. Atty., and Henry Ward Beer, Asst. U. S. Atty., both of Brooklyn, N. Y.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. The plaintiff in error, hereinafter called defendant, has been convicted under an indictment charging him and one Samuel Broder at various times between August 30, 1915, and September 30, 1915, with knowingly, willfully, unlawfully, and feloniously buying and receiving certain specified checks taken from certain mail matter which had been previously stolen from mail which had been deposited in the mail of the United States. Broder pleaded guilty to the indictment and became a witness for the government.

It appears that the defendant in September, 1915, was in desperate need of money, as a mortgage upon his home was about to be foreclosed. He was in conversation about the matter with a friend of his, one Wagner, and was informed by the latter of depredations upon the mails of the United States that Broder was committing for him. The suggestion was made that Broder could help him out, and Broder agreed to steal the checks to help defendant pay off the mortgage, and was to receive in return $100 and an overcoat and suit of clothes. Broder in accordance with this agreement stole from letter boxes the mail, opened the same in defendant's presence, took a number of checks, and forged the indorsements in the presence of the defendant, to whom he gave them. The defendant was shown to have paid over checks so received for the purpose of paying off a second mortgage on the house in which he lived, and to have passed off forged checks to other parties which were shown to have been taken by Broder from private letter boxes in the city of New York.

[1] Section 194 of the Criminal Code (Act March 4, 1909 [Comp. St. 1913, § 10364]), provides as follows:

"Whoever shall steal, take, or abstract, or by fraud or deception obtain, from or out of any mail, post-office, or station thereof, or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or shall abstract or remove from any such letter, package, bag or mail, any article or thing contained therein, or shall secrete, embezzle, or destroy any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or whoever shall buy, receive, or conceal, or aid in buying, receiving, or concealing, or shall unlawfully have in his possession, any letter, postal card, package, bag or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled or abstracted, as herein described, knowing the same to have been so stolen, taken, embezzled, or abstracted; or whoever shall take any letter, postal card, or package, out of any post-office or station thereof, or out of any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or station thereof, or other authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it has been directed, with a design to obstruct the correspondence, or to pry into the business or secrets of another, or shall open, secrete, embezzle or destroy the same, shall be fined not more than two thousand dollars, or imprisoned not more than five years, or both."

By virtue of the above provision it is clear that if defendant had in his possession checks which had been stolen from mail out of "any authorized depository," knowing the same to have been stolen, he has committed the crime with which he is charged and is subject to the punishment prescribed by the act.

It is claimed, however, that the District Court was without jurisdiction, as the box from which the mail is alleged to have been taken is

a private depository, and not within the terms of the Criminal Code. We are urged to hold that boxes privately owned and controlled, and placed in buildings for the reception of mail matter from carriers, and for the convenience of the persons to whom the mail is addressed, cannot be regarded as "authorized depositories."

Order No. 8571 of the Post Office Department, issued January 7, 1915, provides as follows:

"Any letter box or other receptacle intended or used for the receipt or delivery of mail matter on any said delivery route, rural delivery route, star routes or other mail route is hereby designated a letter box for the receipt or delivery of mail matter within the meaning of the act of March 4, 1909."

But it is said that the above order is without effect upon the character of receiving boxes privately owned, as such boxes are beyond the scope of departmental authority. And our attention is called to section 161 of the Revised Statutes (U. S. Comp. St. 1901, p. 80 [Comp. St. 1913, § 235]) which provides as follows:

"The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution * * * of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

It is said that the power of the Postmaster General is ministerial in its character, and that he cannot by an executive order extend the application of a penal law, and make that a crime which was no crime before.

This is very interesting, and would be unanswerable, if the Postmaster General was undertaking on his own authority to enact a criminal law. We do not think he has done so. What he has done is to determine what shall be regarded as a depository for mail; and when he did that the depository so designated became an "authorized depository," a depository authorized by the Post Office Department as a receptacle for the receipt or delivery of mail matter. Mail matter, while continuing as such, is "property" appertaining to the Post Office Department, and the Postmaster General is authorized by the statute to prescribe requirements not inconsistent with law for its custody and preservation. This he has done, and nothing more.

[2] It cannot be denied that the mail is "property," and that it belongs for certain purposes to the United States. Every common carrier has a special property in what he carries. And in Searight v. Stokes, 3 How. 151, 169, 11 L. Ed. 537 (1845), the Supreme Court, speaking through Chief Justice Taney, said:

"The United States have unquestionably a property in the mails. They are not mere common carriers, but a government, performing a high official duty in holding and guarding its own property as well as that of its citizens committed to its care; for a very large portion of the letters and packages conveyed on this road, especially during the session of Congress, consists of communications to or from the officers of the executive department, or members of the Legislature, on public service or in relation to matter of public concern."

In that case the court, construing the acts of Congress ceding to Pennsylvania the part of the Cumberland road which is within that state, and the acts of Pennsylvania accepting the surrender, decided

that a carriage, whenever it is carrying the mail, must be held to be laden with the property of the United States, and consequently exempted from the payment of tolls.

In United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563 (1910), the defendants were indicted for grazing sheep on the Sierra forest reserve without having obtained the permission required by the regulations prescribed by the Secretary of Agriculture. They demurred on the ground that the Forest Reserve Act of 1897 (Act June 4, 1897, c. 2, 30 Stat. 11), was unconstitutional, in that it delegated to the Secretary of Agriculture power to establish regulations concerning the use of such forest reservations and made a violation thereof a penal offense. The Supreme Court reversed the lower court, and held the demurrers should have been overruled. It admitted that Congress could not delegate legislative power, but held that authority to make administrative rules was not a delegation of legislative power, and that such rules were not raised from an administrative to a legislative character because the violation thereof was punished as a public offense.

[3] Congress has full power to legislate concerning the mail. In Ex parte Jackson, 96 U. S. 727, 24 L. Ed. 877 (1877), the court, speaking through Mr. Justice Field, said:

"The power vested in Congress 'to establish post offices and post roads' has been practically construed, since the foundation of the government, to authorize not merely the designation of the routes over which the mail shall be carried, and the offices where letters and other documents shall be received to be distributed or forwarded, but the carriage of the mail, and all measures necessary to secure its safe and speedy transit, and the prompt delivery of its contents."

And that statement of the law was repeated in Re Rapier, 143 U. S. 110, 133, 12 Sup. Ct. 374, 36 L. Ed. 93 (1892).

Section 161 of the Revised Statutes (U. S. Comp. St. 1901, p. 80 [Comp. St. 1913, § 235]) came under review in the Circuit Court of Appeals in the Eighth Circuit in Lewis Publishing Company v. Wyman, 182 Fed. 13, 104 C. C. A. 453 (1910). The court held that under that section the Postmaster General was authorized to limit the number of sample copies a publisher could send out at a certain rate of postage under Act March 3, 1885, c. 342, 23 Stat. 385. That act did not specifically limit the number of sample copies that might be sent out at the pound rate, and it was claimed that, as the act did not do so, the department could not do so. The court speaking through Judge Hook said:

"We think that, under the authority conferred by Congress * * * upon the head of the department to prescribe regulations not inconsistent with law for the performance of its business, the Postmaster General may lawfully impose such a limitation. The act of Congress does not purport to grant an unlimited privilege as to sample copies, and its very generality and indefiniteness invites a supplementary regulation. It is not necessary to the validity of a departmental regulation that specific statutory authority for it be discovered. It would be impracticable to set forth in the statutes all the rules for the conduct of the business of the great executive departments of the government, and Congress has wisely confined itself to marking general outlines and imposing general limitations, leaving the subordinate and supplemental details

240 F.—23

suggested by practical experience to be prescribed by the heads of the departments. A departmental regulation must not be inconsistent with the statutes, but it may be by way of execution or supplement."

It is of the utmost importance that the immense and valuable correspondence intrusted to the government should be most carefully and scrupulously guarded during the whole period which must elapse from the time it leaves the possession of the senders until it reaches the hands of those who are entitled to receive it. That the government has full power to protect it by its laws is not to be doubted. If it had not done so, it would not have performed its duty to the country. If it is important that mail deposited in public mail boxes owned by the government should be safeguarded against thieves, it is equally important that mail deposited in private boxes attached to residences or to apartment houses or along roadsides in rural sections of the country should be protected by the federal authority; and it is our opinion that mail placed in such depositories is protected by the law which Congress has enacted.

These authorized depositories of mail are provided for the convenience of the carriers. The Post Office Department even imposes it as a duty upon the recipients of mail in those sections of the country where there is a free rural delivery to provide along the highway private boxes for the receipt of the mail. In section 824 of the Postal Laws and Regulations it is prescribed that:

"Persons desiring rural delivery service shall provide and erect at their own expense boxes conforming to official specifications and requirements."

It is not to be supposed that the government, having made it compulsory to furnish such depositories, is without the power to protect the mail when it is deposited therein, or that it has failed to exercise its right to protect it against the depredations of the criminal classes. To require the mail to be deposited in such places, and then leave it there unprotected, would convert these depositories into mere provocatives to plunder.

[4] On the trial of the case Broder, who had pleaded guilty to the offense charged in the indictment, was called as a witness by the prosecution. It appeared that he had been sentenced on January 28, 1914, for more than one year's imprisonment in the Elmira State Reformatory upon a conviction for burglary in the second degree. The record of that conviction was produced in open court, and counsel for defendant objected to his testifying on the ground that he had been convicted of an infamous crime. The common law excluded the testimony of a person who had been convicted of such a crime; and as Congress has passed no act changing the rule of the common law as to the competency of witnesses in criminal cases in the courts of the United States, except in special instances not including or material to the class of cases to which this belongs, it is urged that the admission of Broder's testimony was plainly error for which the conviction should be set aside. It is too late to raise that question in this court. We passed upon the question in Rosen v. United States, 237 Fed. 810, —— C. C. A. ——, decided at this term. In its facts it is similar to this. In that case Judge Coxe said:

"The tendency of modern thought is towards the abolition of the archaic rules which undertook to declare, arbitrarily, who were and who were not entitled to credence as witnesses and who should be absolutely debarred from taking the stand. All this is changed and now in most enlightened and progressive jurisdictions the tendency is to receive all the testimony bearing upon the issue, irrespective of the character of the witness who gives it. Proof of the commission of a crime discredits a witness, but it does not absolutely exclude him from the witness stand."

To that decision we adhere. In Brown v. United States, 233 Fed. 353, 147 C. C. A. 289 (1915), the question came before the Circuit Court of Appeals in the Sixth Circuit, and that court held that, as the federal courts are courts of an entirely different sovereignty and are wholly independent of the states, a conviction of an infamous crime in the state court rendering the person incompetent to testify in the state court does not render him incompetent to testify in the federal courts, any more than it would in the courts of a foreign jurisdiction, for the federal courts, while following the state laws, do not give effect to a conviction by a state court. We are in full accord with that decision, and hold that no error was committed in the admission of the testimony of Broder.

Judgment affirmed.