(No. 6869. March 25, 1941.)

LEE A. WHEELER, on behalf of himself and on behalf of all persons similarly situated, Respondent, v. J. L. BALDERSTON, as Commissioner of Law Enforcement of the State of Idaho, Appellant.

[111 Pac. (2d) 878.]

Bert H. Miller, Attorney General, and J. R. Smead, Assistant Attorney General, for Appellant.

Ralph R. Breshears, for Respondent.

HOLDEN, J.—June 21, 1940, respondent brought this action on behalf of himself and other persons similarly situated against Harry M. Raynor, then Commissioner of Law Enforcement of the State of Idaho, for a declaratory judgment under the provisions of chapter 70, 1933

Sess. Laws, adjudging and declaring the rights, status and other legal relations of the respondent as affected by the Uniform Motor Vehicle Registration Act, in particular, subdivision (g) of section 48-127, I. C. A., as amended by chapter 227, 1939 Sess. Laws. From the facts, which were stipulated, it appears respondent is a duly appointed, authorized, qualified and acting rural mail carrier engaged in the carriage of United States mail over rural free delivery route No. 1 from the United States post office at Emmett, Gem County, Idaho; that the route is 59.3 miles in length; that respondent makes one trip over the route each day; that for the transportation of the mail he uses a Studebaker passenger sedan, his private automobile, which is a family pleasure car when not engaged in carrying the mail; that for such services respondent is paid an annual salary of $2380 and in addition thereto receives the sum of 5¢ per day per mile as an equipment allowance, as provided by law.

It is further stipulated "the plaintiff [respondent] does not carry passengers, freight or merchandise for hire in said Studebaker sedan, either over his rural route or elsewhere, and does not transport or convey anything in addition to the United States mail in his said automobile over said rural route hereinbefore referred to, or otherwise, and that said automobile used by the plaintiff for the purpose of transporting and conveying United States mail over the rural route hereinbefore referred to is designed exclusively for the purpose of carrying passengers and is not designed for the purpose of carrying either passengers or property for hire."

It is conceded that the automobile in question is an ordinary passenger sedan; that respondent is not a contract carrier, either of mail, passengers or freight; that respondent carries nothing but the mail furnished him by the post office for distribution; that respondent has paid the $5.00 license fee on his automobile for the year 1940 as provided by subdivision (a) of section 48-127, as amended, *supra;* and that the vehicle in question cannot be classified either as a farm, private or commercial truck.

Upon the facts so stipulated and adopted by the court

as its findings, it entered judgment in favor of respondent from which Mr. Raynor, as Commissioner of Law Enforcement, appealed to this court. But after the appeal was taken, upon proper application therefor, the present Commissioner of Law Enforcement, J. L. Balderston, was substituted.

The Commissioner contends "respondent should register his vehicle under the provisions of section 48-127, I. C. A., as amended by chapter 227 of the 1939 Session Laws of Idaho under subsection (g) and particularly as it applies to an auto stage as defined by the statute and not under subdivision (a) of said chapter as amended for the reason that plaintiff and respondent in the carrying of the United States mail, which is property, is using his vehicle primarily for hire." And respondent also contends the question for determination is "whether or not subdivision (g) of chapter 227, Idaho Session Laws 1939, is applicable to the respondent."

The pertinent provisions of section 48-127, I. C. A., as last amended (1939 Sess. Laws, chap. 277, p. 505) are:

"Registration Fees—Schedule. (a) The fee for licensing each motor vehicle designed exclusively for the purpose of carrying passengers and not used primarily for hire shall be five dollars.

(b) . . . .
(c) . . . .
(d) . . . .
(e) . . . .
(f) . . . .

(g) On all other motor vehicles, irrespective of body type, designed, intended, or used primarily for the transportation of property the annual license fee shall be based upon the maximum gross weight thereof as set by the licensee in his application and shall be in accordance with the following schedule:

| Maximum Gross Weight | Farm Truck | Private Truck | Commercial Truck or Auto Stage |
|---|---|---|---|
| Less than 5,000 pounds | $5.00 | $10.00 | $20.00 |

. . . . "

But a single question is presented for determination

on this appeal: Is respondent's automobile an "auto stage" within the meaning of subdivision (g) of section 48-127, *supra?*

It will be observed the statute makes two general classifications of motor vehicles. The first (a) embraces all motor vehicles not used "primarily for hire." The second embraces all other motor vehicles "designed, intended, or used primarily for the transportation of property." What kind of "property," then, did the legislature have in mind? There seems to be but one reasonable answer to that question—property transported in commerce between the people within the state and property transported in commerce into the state. It must be conceded the United States mail is not transported in trade or commerce between the people of the state. Appellant contends, however, the United States mail is *property,* and being property and because it is *property,* that that in and of itself brings the mail within the provisions of the statute. In support of his contention he cites *Pakas v. United States,* 240 Fed. 350, and other cases to the same effect. That case involved the theft of certain checks from a privately-owned letter box. It was claimed the court was without jurisdiction of the offense charged in that the stolen mail was taken from a private depository, hence, not within the terms of the criminal code. The court, discussing the contention, said:

"We are urged to hold that boxes privately owned and controlled, and placed in buildings for the reception of mail matter from carriers, and for the convenience of persons to whom the mail is addressed, cannot be regarded as 'authorized depositories.'

"Order No. 8571 of the Post Office Department, issued January 7, 1915, provides as follows: 'Any letter box or other receptacle intended or used for the receipt or delivery of mail matter on any said delivery route, rural delivery route, star routes or other mail route is hereby designated a letter box for the receipt or delivery of mail matter within the meaning of the act of March 4, 1909.'

"But it is said that the above order is without effect upon the character of receiving boxes privately owned, as such boxes are beyond the scope of departmental author-

ity. And our attention is called to Section 161 of the Revised Statutes (U. S. Comp. St. 1901, p. 80 [Comp. St. 1913, Section 235]) which provides as follows: 'The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution ... of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it.'

"It is said that the power of the Postmaster General is ministerial in its character, and that he cannot by an executive order extend the application of a penal law, and make that a crime which was no crime before.

"This is very interesting, and would be unanswerable, if the Postmaster General was undertaking on his own authority to enact a criminal law. We do not think he has done so. What he has done is to determine what shall be regarded as a depository for mail; and when he did that the depository so designated became an 'authorized depository,' a depository authorized by the Post Office Department as a receptacle for the receipt or delivery of mail matter. Mail matter, while continuing as such, is 'property' appertaining to the Post Office Department, and the Postmaster General is authorized by the statute to prescribe requirements not inconsistent with law for its custody and preservation. This he has done, and nothing more.

"It cannot be denied that the mail is 'property,' and that it belongs for certain purposes to the United States. Every common carrier has a special property in what he carries. And in *Searight v. Stokes*, 3 How. 151, 169, 11 L. Ed. 537 (1845), the Supreme Court, speaking through Chief Justice Taney, said: 'The United States have unquestionably a property in the mails. They are not mere common carriers, but a government, performing a high official duty in holding and guarding its own property as well as that of its citizens committed to its care; for a very large portion of the letters and packages conveyed on this road, especially during the session of Congress, consists of communications to or from the officers of the

executive department, or members of the Legislature, on public service or in relation to matter of public concern.' "

Continuing, the court held:

"It is not to be supposed that the government, having made it compulsory to furnish such depositories, is without the power to protect the mail when it is deposited therein, or that it has failed to exercise its right to protect against the depredations of the criminal classes. To require the mail to be deposited in such places, and then leave it there unprotected, would convert these depositories into mere provocatives to plunder."

 While it is true "mail matter, while continuing as such, is 'property' appertaining to the Post Office Department, and the Postmaster General is authorized by the statute to prescribe requirements not inconsistent with law for its custody and perservation," and while it is likewise true the mail, for certain purposes, belongs to the United States, and that the United States has such a special property in the mail as empowers the federal government to protect and preserve it, as pointed out by the court in the Searight and Pakas cases, it does not follow United States mail is *property*, in the sense that word is used in the statute. Such a construction would force the word out of the true meaning intended by the legislature.

The judgment must be affirmed, and it is so ordered.

Budge, C. J., and Morgan, J., concur.

AILSHIE, J. (Dissenting)—It seems to me that the majority opinion is predicated on an erroneous theory, namely, that the legislature was attempting to tax "commerce between the people"; and that the tax is laid on the *business* rather than on the *motor vehicle*. The tax is in fact laid on the motor vehicle for the use of the road. The legislature, in enacting sec. 48-127, I. C. A. (as amended, 1939 Sess. Laws, p. 506), enumerated various kinds and classes of motor vehicles and motor cycles, by paragraphs (a) to (f), both inclusive, and then, in order to make sure that nothing had been omitted, concluded: (g) "On all other motor vehicles, irrespective of body

type, designed, intended, or *used primarily for the transportation of property....* " (Italics supplied.)

It therefore seems clear that the legislature intended to require a license fee to be paid on all motor vehicles "used primarily for the transportation of property." That is evidently predicated on the theory, that such vehicles would be an additional wear, burden and risk on the highways; so much so that they should pay an additional rate, over and above the minimum $5.00 registration fee. The lawmakers manifested no purpose of taxing a business or commerce but rather to lay a tax on certain instrumentalities that might be used for that purpose. Here, there is no attempt to tax the business of carrying the mail, the carrier, nor the mail itself. The carrier might carry it on horseback, on foot or with horse and buggy, in which event there would be no tax or exaction on the instrumentality used. No matter how transported, it is *property*.

I am authorized to say that Justice Givens concurs in the views above expressed.